**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:16CR260 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| | : | |
| RUSSELL DAVIS, | : | **MOTION TO SUPPRESS** |
| | : | (Oral Hearing Requested) |
| Defendant. | : | |

Defendant, through undersigned counsel, hereby moves to suppress any and all evidence that was obtained as a result on an unconstitutional search in violation of Mr. Davis' Fourth Amendment rights. A memorandum in support is attached.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Edward G. Bryan*
EDWARD G. BRYAN (#0055556)
Assistant Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: edward_bryan@fd.org

Attorney for Russell Davis

1

## MEMORANDUM

### I.     Background

On March 7, 2016, heroin user Jacob[1] and Zaharias obtained what they believed to be heroin. After ingesting the purported heroin, Jacob died from an overdose. Toxicology reports revealed that Jacob had taken a lethal dose of Fentanyl. The government alleges that earlier that day Zaharias and Jacob had made contact with Defendant Russell Davis via cellular phone.

Thirty-seven days later, on April 12, 2016, Detective Sergeant Buddy Sivert of the Lorain Police Department requested a search warrant for Mr. Davis' home, located 1832 Garden Avenue, Lorain, Ohio. Also requested was a warrant to seize and search Mr. Davis' cell phone (216)-526-8810. The affidavit contained the following averments:

1.     In the early morning hours of On March 7, 2016, Jacob was in contact with Zaharias, another heroin user, for the purpose of obtaining heroin.

2.     Zaharias and Jacob made contact with a male known as "Red" and later identified as Russell Davis, on his cellular phone (216) 526-8810 for the purpose of purchasing heroin, both through text and communication.

3.     Zaharias and Jacob met with Russell "Red" Davis on March 7, 2016 for the purpose of buying heroin from him.

4.     Jacob ingested the purported heroin from Russell "Red" Davis and it caused him to overdose. The time between the purchase of the heroin from Russell "Red" Davis and the estimated time of death, by the Lorain County Coroner Steve Evans is approximately one (1) hour.

5.     Toxicology tests conducted by the Lorain County Coroner's Office revealed that Jacob had a lethal dose of Fentanyl in his system.

6.     On April 12, 2016 at 0945 hours Zaharias received a text message from Russell "Red" Davis via his cellular telephone with the number (216) 526-8810.

The affidavit concludes:

---

[1] Only first names are used to protect privacy.

> Based on this investigation, your affiant has determined that Russell "Red" Davis is trafficking in heroin from the residence at 1832 Garden Avenue and he is using his cellular telephone (216) 526-8810 as an instrument of his trafficking business. Your affiant has probable cause to believe that the cellular telephone with the number (216) 526-8810 is still inside 1832 Garden Avenue, Lorain, Ohio, the residence of Davis.

The affiant provides no evidentiary link between Mr. Davis and the residence at 1832 Garden Avenue. Based on the above information, a Lorain County Municipal Court Magistrate issued a search warrant for 1832 Garden Avenue. On April 18, 2016, the Lorain Police Department obtained a warrant to search the cell phone (216) 526-8810 found during the execution of the aforementioned search warrant on April 13, 2016.

Mr. Davis submits the affidavit underlying the search warrant failed to provide a substantial basis for determining the existence of probable cause to search Mr. Davis's home and, additionally, was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Mr. Davis thus requests the Court suppress all items police took from his home on the authority of the unconstitutional search warrant, as well as evidence obtained pursuant to the April 18 search warrant executed on the cell phone found during the April 13 search.

## II.    Applicable Law

The Fourth Amendment guarantees "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The warrant requirement is intended to protect an individual's privacy, to stand between an individual's privacy rights and the police, and to provide for a procedure involving a neutral and detached Magistrate who is responsible for making an informed and thoughtful determination regarding probable cause. To make a sufficient probable cause finding in support of a warrant to search a private residence, an affidavit must contain facts that indicate "a fair probability that evidence of a crime will be

located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005).

In examining the sufficiency of the evidence supporting probable cause offered in support of a search warrant, the probable cause determination is limited to the information set forth in the four corners of the affidavit, and the sufficiency of the search warrant affidavit is judged based on the totality of the circumstances, as opposed to line-by-line scrutiny. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Importantly, the information necessary to establish probable cause must be timely, as probable cause must exist at the time the warrant is issued. "Because probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence." *United States v. Hython*, 443 F. 3d. 480, 486 (6th Cir. 2006) (citations omitted).  If there is no time reference contained in the affidavit for the allegations, "there is absolutely no way to begin measuring the continued existence of probable cause."  *Id.*

When reviewing whether information given in support of a probable cause finding was stale, this Court must consider "the defendant's course of conduct; the nature and duration of the crime; and any corroboration of the older and more recent information." *United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003).  For instance, the Sixth Circuit has considered whether the crime was a chance encounter or a regenerating conspiracy, whether the suspect is nomadic or entrenched, whether the items sought are perishable and easily transferable or of enduring utility, and whether the place to be searched is a mere criminal forum of convenience or a secure operational base. *United States v. Green*, 250 F.3d 471, 480-81 (6th Cir. 2001) (citations omitted).

When a search warrant affidavit merely ratifies "the bare conclusions of others," the affidavit is a "bare bones" affidavit, meaning the affidavit sets forth "suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and the basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1998). In determining whether an affidavit is "bare bones," the reviewing court is to be concerned exclusively with the statements contained within the affidavit itself. *United States v. Frazier*, 423 F.3d 526, 534, n. 4 (6th Cir. 2005) (citing *Weaver*, 99 F.3d at 1378).

The "fruit of the poisonous" tree doctrine allows exclusion of evidence police unconstitutionally obtain through bare bones affidavits. This doctrine provides that, when there is a primary illegality, such as an invalid warrant, evidence obtained through exploitation of that illegality may be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (allowing exclusion of all evidence seized in violation of the Fourth Amendment and further exclusion of all evidence subsequently obtained as a result of that particular violation).

In *United States v. Leon*, 468 U.S. 897, 905 (1984), the Supreme Court held evidence not supported by a valid search warrant affidavit will be suppressed unless police officers seized the contested evidence "in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." The *Leon* "good faith" exception is inapposite in four situations:

> (1) where the issuing [judge or] magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing [judge or] magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) **where the affidavit was nothing more than a 'bare bones' affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable**; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

5

*Hython*, 443 F.3d 480, 484 (citing *Leon*, 468 U.S. at 923) (emphasis added).  Thus, when a search warrant affidavit is "bare bones" because it failed to provide sufficient factual information for a finding of probable cause, the *Leon* "good faith" exception cannot rescue the deficient affidavit.

## III.  Analysis

The April 12, 2016 search warrant relied on stale evidence listed in Detective Sergeant Sivert's bare bones affidavit. Because the evidence relied upon was stale and the affidavit was "bare bones," failing to provide sufficient factual information for a finding of probable cause, the fruits of the April 13, 2016 search, including cocaine found at 1832 Garden Avenue and any information found on the cell phone pursuant to the subsequent April 18, 2016 search warrant, must be suppressed.

### A.  The affidavit improperly relies on stale evidence

"[I]n seeking to establish probable cause to obtain a search warrant, the affidavit may not employ 'stale' information, and whether information is stale depends on the 'inherent nature of the crime.'" *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (citations omitted). Whether information is stale depends on "several factors, such as 'the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?).'" *Id.* (citation omitted). When the case at issue is a drug crime, "information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'"  *Id.* (citation omitted).

"For example, information two years old is not stale as regards a long-term and non-portable enterprise like growing marijuana, but a two-month old sighting of retail-narcotics cash proceeds is stale where the affidavit does not indicate that the defendant was engaged in a long-term criminal enterprise." *Id.* (*comparing United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *with United States v. Helton*, 314 F.3d 812, 822 (6th Cir. 2003)). The affidavit presented to the magistrate does not allege that Mr. Davis is engaged in a long-term drug trafficking business. While Detective Sivert avers that Mr. Davis sold heroin to Zaharias and Jacob on March 7, 2016, there are no facts supporting a probable cause determination that Mr. Davis continued to sell drugs continuously thereafter or that he was engaged in any drug sales after that date.

The text message between Mr. Davis and Zaharias on April 12, 2016 did not refresh or otherwise corroborate the stale information relied upon. The affidavit fails to provide the contents or subject of this text message, and therefore provides no evidence of drug trafficking. While if "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant," Detective Sivert's affidavit references only one alleged incident of criminal activity involving the cell phone occurring over one month before the search warrant was executed.

Because affidavit does not state the April 12, 2016 text message has anything to do with any manner of drug trafficking, there is no reason to believe evidence of drug trafficking would still be present at 1832 Garden Avenue when the search warrant was executed 37 days later. *See United States v. Johnson*, 437 F.3d 69, 72-73 (D.C. Cir. 2006) (where fresh information does not corroborate drug dealing activity, old information remains stale) (citing *United States v. Webb,* 255 F.3d 890 (D.C. Cir. 2001); *United States v. Martinez*, No. CR 13–00794 WHA, 2014 WL

3956677, at *7 (August 12, 2014 N.D. Cal.) (recent information detailing ongoing investigation of gang-related activity prevents staleness); *United States v. Button*, 653 F.2d 319 (affidavit contains no factual information suggesting evidence would be in residence now).

Because of thirty-seven days that took place before seeking a search warrant, and that there was no evidence presented to the Magistrate of any ongoing drug enterprise, the information in the affidavit was stale. As the affidavit to the search warrant was based on stale information, the search warrant lacked probable cause and therefore violated Mr. Davis' right to free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution. Thus, the evidence seized as a result of this search must be suppressed.

**B.      The bare bones affidavit does not provide facts sufficient to establish probable cause**

Separate from the arguments in the preceding section, the search warrant affidavit is deficient because it fails to establish a substantial basis for a finding of probable cause that the cell phone, (216) 526-8810, was used in drug trafficking and would be found at 1832 Garden Avenue at the time the search warrant was executed. Even if the unsupported allegation that Mr. Davis was engaged in drug trafficking was accepted, Detective Sivert would need to provide support from experience or this investigation that evidence of drug trafficking would be found on Mr. Davis' cell phone and that the cell phone would be located in Mr. Davis' residence. *See United States v. Gorny*, Criminal No. 13-70, 2014 WL 2860637, at *5 (W.D. Penn. June 23, 2012) (officers' inclusion of and reliance on experience that those engaged in drug trafficking may switch cell phones established probable cause for search of cell phones).

**1.      There is not a sufficient nexus between the residence and the alleged illicit activity**

Simply stating that Mr. Davis sent a text message to Zaharias does not support the conclusion that Mr. Davis was engaged in drug trafficking and that evidence of such trafficking could be found on his cell phone. Not only are there no fresh or corroborating statements supporting a finding that Mr. Davis engaged in drug trafficking using the cell phone, but the affidavit fails to offer any facts establishing 1832 Garden Avenue as Mr. Davis's residence. Even if the affidavit did establish 1832 Garden Avenue as Mr. Davis's residence, it does not show a nexus between the residence and any alleged drug trafficking activity, including on Mr. Davis's cell phone. An allegation that Mr. Davis sold drugs once is not probable cause to search his home. *See United States v. Gunter*, 266 F. App'x 415, 418 (6th Cir. 2008) (discussing reliable information required to establish nexus between drug dealing activity and residence).

To establish a nexus between the place to be searched and the evidence sought, a warrant application must show more than just that "the owner of the property is suspected of crime, but instead must establish that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Gunter*, 266 F. App'x 415, 418 (6th Cir. 2008) (internal quotations omitted) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). The Sixth Circuit has held, "an issuing judge may not issue a search warrant that lacks evidence linking a suspect's criminal activity to his residence." *United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008).

### 2.    A nexus between illicit activity and the residence cannot be inferred from these facts

While "in cases involving a variety of suspected crimes . . . an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence," such inferences have been restricted to specific circumstances, such as searches for the firearms used to commit crimes. *Williams*, 544 F.3d at 688 (citing *United States v. Jones,* 994 F.2d 1051, 1056

(3d Cir.1993) (firearms used in a robbery are "likely to be kept in a suspect's residence"); *United States v. Steeves,* 525 F.2d 33, 38 (8th Cir. 1975) (noting in a bank robbery case that there is "little reason to believe that any of the bank's money . . . would still be in the home," but "the same could not be said of the revolver").

In drug cases where no illegal drug activity was observed at the defendant's residence but probable cause supported a search warrant, independent suspicious circumstances have led police to the defendant's residence and were included in underlying affidavits. *See United States v. Caicedo,* 85 F.3d 1184 (6th Cir. 1996) (warrant upheld despite strong link to residence because defendant had lied about address); *United States v. Miggins,* 302 F.3d 384 (6th Cir. 2002) (warrant upheld where police had found address with list of known aliases used in known drug conspiracy).

A bare bones affidavit will not suffice even when there has been an extensive investigation. In *United States v. Frazier*, 423 F.3d 526, 530 (6th Cir. 2005), a warrant was invalid because police failed to mention in the supporting affidavit that a number of controlled drug purchases were recorded. Without this detail, the supporting affidavit was "based almost exclusively on the uncorroborated testimony of unproven confidential informant . . . [and] the allegation that the defendant [was] a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *Id.* at 533.

In the instant case, the affidavit supporting the April 12, 2016 search warrant of 1832 Garden Avenue is bare bones. It does not set forth facts sufficient for a probable cause determination that Mr. Davis engaged in drug trafficking using the cell phone in (216) 526-8810, or that Mr. Davis's cell phone would be located inside the residence. As the search warrant is not supported by probable, its issuance violated Mr. Davis' Fourth Amendment rights. No link is

10

established between illegal activities and the residence searched, and all fruits of the April 13, 2016 search must be suppressed.

**IV.    Conclusion**

Mr. Davis acknowledges the sufficiency of a search warrant affidavit is to be judged on the totality of the circumstances, not scrutiny of what the affidavit lacks. *Jackson*, 470 F.3d at 306; *Coffee*, 434 F.3d at 892.  However, the information lacking in Detective Sivert's affidavit is information that was necessary to a finding of probable cause to search the 1832 Garden Avenue home.  The affidavit relied on stale and conclusory information. Because it constituted no more than a bare bones affidavit that could not support a finding of probable cause, the April 12, 2016 search warrant cannot be saved through *Leon*'s good-faith exception.  Any evidence that was the fruit of this unlawful search must be excluded, including evidence pursuant to the April 18, 2016 search warrant executed on the cell phone 216 526-8810.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Edward G. Bryan*
EDWARD G. BRYAN (#0055556)
Assistant Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: edward_bryan@fd.org

Attorney for Russell Davis

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2017, a copy of the foregoing Motion was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

*/s/ Edward G. Bryan*
EDWARD G. BRYAN (#0055556)
Assistant Federal Public Defender
