IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR260 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| RUSSELL DAVIS, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | <u>MOTION TO SUPPRESS</u> |

Now comes the United States of America, by and through its counsel, David A. Sierleja,

Acting United States Attorney, Robert F. Corts and Vasile C. Katsaros, Assistant United States

Attorneys, and hereby responds in opposition to defendant Russell Davis' motion to suppress and

his supplemental motion to suppress.

## I.     BACKGROUND

### A.     Procedural History

On August 17, 2016, the defendant, Russell Davis, aka "Red" (hereinafter "Davis"), was

indicted by a federal grand jury in a two-count indictment.  (R. 1: Indictment).  Count 1 charged

Davis with distribution of fentanyl resulting in death, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(C).  (<u>Id.</u>).  Count 2 charged Davis with possession with intent to distribute cocaine, in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (<u>Id.</u>).

Davis was arraigned by Magistrate Judge William H. Baughman, Jr., on September 6, 2016, counsel was appointed and a detention hearing was scheduled following the government's motion for detention.  (R. 9: Minutes).  Davis ultimately waived the detention hearing.  (R. 16: Waiver of Detention Hearing).

Presently before the Court are Davis' motion to suppress and his supplemental motion to suppress, filed on February 13, 2017, and March 3, 2017, respectively.  (R. 21: Motion to Suppress; R. 23: Supplement to Defendant's Motion to Suppress).

**B.     Facts**

On March 7, 2016, the Lorain Police Department responded to a report of a drug overdose at 5803 Province Court, Lorain, Ohio.  The victim of the overdose, Jacob Castro-White, was pronounced dead at the scene and toxicology reports of the Lorain County Coroner's Office revealed that Castro-White's blood contained a fatal dose of fentanyl.  Fentanyl is a powerful opioid pain medication which is sometimes mixed with, and/or substituted for heroin by narcotics traffickers.

Shortly before his death on or about March 7, 2016, Castro-White was in contact with Zaharis Karaplis for the purpose of locating a source of heroin for Castro-White and Karaplis to purchase.  Karaplis made contact with Davis via text message and/or voice call for the purpose of purchasing heroin from Davis for Karaplis and Castro-White.  Davis was known to Karaplis as a supplier of heroin.  Investigators determined that Davis used cellular phone number 216-526-8810 during his contacts with Karaplis.

In the late hours of March 6, 2016, into the early morning hours of March 7, 2016, Castro-White and Karaplis met with Davis and purchased fentanyl.  The sale took place at Davis' place of residence, 1832 Garden Avenue, Lorain, Ohio.

2

After purchasing the drugs from Davis at approximately 12:30 a.m., Castro-White and Karaplis returned to Castro-White's home, where Castro-White ingested a portion of the drugs purchased from Davis.  They then drove to Karaplis' residence where Karaplis ingested a portion of the drugs purchased from Davis.  A short while later, Castro-White returned home and used. Castro-White's mother discovered his body in his bedroom at approximately 6:50 a.m. on March 7, 2016.

On April 11, 2016, thirty-six days later, investigators obtained a warrant for the arrest of Russell Davis and on April 12, 2016, investigators obtained a warrant to search his residence at 1832 Garden Avenue, Lorain, Ohio.  The warrant authorized the search of certain, specific items: cellular telephone 216-526-8810, records/documents showing ownership of the phone, and records or documents showing those using or occupying 1832 Garden Avenue, Lorain, Ohio, as investigators believed it would contain evidence of drug trafficking.[1]

**Prior to receiving the search warrant, investigators learned the following:**

- Investigators immediately upon entering the home where Castro -White was found dead on March 7, 2016, confiscated the phone Castro-White used to contact Karaplis. This phone demonstrated that on the night prior and during the early morning hours of March 7, 2016, Castro-White was in contact with Harry regarding the securing of some drugs.

- On March 9, 2016, Detective Buddy Sivert of Lorain Police Department received Castro-White's text message content from the days in question.  Upon reviewing the text messages, Detective Sivert noted text messages which mentioned an individual named "Red."

- On March 22, 2016, investigators also met with Corey Stock who told them that he knew that Karaplis and Castro-White had purchased drugs from an individual known as "Red" who he knew to sell drugs.  Stock described the general area where these transactions take place and it was consistent with the location of Davis' residence.

---

[1] These warrants were issued by the Lorain Municipal Court Judge Magistrate Christopher Cook, (now a Lorain County Court of Common Pleas Judge) whom the government believes will testify that when appropriate he takes additional information from each affiant before issuing a warrant, which he then considers in unison with the affidavit provided in determining probable cause in the warrant.

3

- Investigators then conducted interviews with Karaplis who initially did not provide investigators with a truthful statement.  Ultimately, Karaplis supplied the name of "Red" to investigators as the person who sold the drugs to himself and Castro-White.  On April 1, 2016, Karaplis stated that he and Castro-White drove to Red's house to buy the drugs and Karaplis described to the police the area and location of this house.  Detective Sivert then used a Google Earth program to show Karaplis the location where he and Castro-White had gone to purchase the drugs. Karaplis pointed out the exact house as being on Garden Street in Lorain. Karaplis also described the approximate age and physical description of "Red" which matched Russell Davis and a description of a vehicle used by "Red."  Karaplis also confirmed that phone number 216-526-8810 was the number used to contact "Red" to arrange the drug sale.  Karaplis further explained to investigators that "Red" had continued to contact him via phone number 216-526-8810  after Castro-White's death and "Red" continued to ask about Corey's location claiming that he, "Red," was worried that he was talking to the police.   Karaplis was later shown a photo array and he selected a photograph of Russell Davis as the individual he and Castro-White had purchased drugs from on the date in question.

- With this information learned from the phones, and interviews with Stock and Karaplis, Detective Sivert went to the residence at 1832 Garden, Lorain, Ohio, and located a car matching the description from Karaplis.  Sivert determined that the car was indeed titled to Russell Davis. Detective Sivert also located prison records for Russell Davis which indicated that with his prior drug convictions his alias was "Big Red."

- - On April 12, 2016, and prior to the securing of the search warrant, Karaplis met with investigators again and told them that he had received a text message from "Red," on that day, April 12, 2016, and showed Detective Sivert the message.  The message was from phone number 216-526-8810 and stated. "hit u up homie".

- On April 12, 2016, and prior to the securing of the search warrant, Detective Sivert witnessed Karaplis placing a "controlled call" to phone number 216-526-8810 (Target Phone). During this call which was recorded, Karaplis and Davis spoke in a conversation. "Red" questioned Karaplis about Corey Stock being "sweated" by the police about the death of Castro-White.

Based upon the above, and prior to the securing of and execution of the search warrant at

1832 Garden, Lorain, Ohio, investigators believed that Jacob Castro-White and Harry Karaplis

purchased heroin/fentanyl from Russell Davis, aka "Red," from Davis' residence  located at

1832 Garden, Lorain, Ohio.  Furthermore, the purchase was arranged with "Red" by using phone

number 216-526-8810.  It was known by investigators that "Red" continued to use that phone,

216-526-8810, at least up until April 12, 2016, as Detective Sivert witnessed a call between

4

Karplis and "Red" on that date.  Furthermore, investigators had linked a vehicle seen at the residence that was titled to Russell Davis.  Thus, indicating that Russell Davis was still likely living there.

On April 13, 2016, the warrants were executed.  Davis was located outside the residence and arrested.  Upon securing the residence, another resident was presented with the search warrant. The other resident advised that Davis' room was upstairs.  In the upstairs bedroom, investigators located documents for Davis, $500 in cash, two bags of cocaine, multiple bags of marijuana, a digital scale, and a Max West cell phone.[2]  During the execution of the search warrant, Lorain Police Department officers dialed 216-526-8810, and observed a silver LG smart phone with a black detachable case ringing downstairs and this phone was also seized.

It must be noted that, prior to the execution of the search warrant, Lorain Police investigators had received phone records, in the form of toll records from a number of different phones involved in the investigation.  Investigators had in their possession records from Karaplis' phone that showed contact between his phone and cellular phone number 216-526-8810 then known to be Davis' phone.  As such, investigators were aware of the existence of phone number 216-526-8810 prior to the execution of the warrant.  On April 18, 2016, investigators obtained and subsequently executed a search warrant for the contents of the phone.

---

[2] The government asserts that the warrant included an authorized search for documents and therefore, pursuant to the warrant, agents were permitted to search areas that could contain documents.  Once doing so, and discovering items of contraband, the agents were permitted to seize said items.  United States v. Blakeney, 942 F.2d 1001, 1028 (6th Cir. 1991) ("plain view doctrine will support a warrantless seizure if the following three conditions are met: (1) the officer is lawfully on the premises; (2) the discovery is inadvertent; and (3) its incriminating nature is immediately apparent."), cert. denied 502 U.S. 1035 (1992) (citing Coolidge v. New Hampshire, 403 U.S. 443, 464–69 (1971); Texas v. Brown, 460 U.S. 730, 737 (1983)).  United States v. Calloway, 116 F.3d 1129, 1133 (6th Cir.) (upholding seizure of documents in "plain view" which exceeded the scope of search warrant where the "incriminating character of the documents" was "immediately apparent"), cert. denied, 522 U.S. 925 (1997).

Presently before this Honorable Court are Davis' motions to suppress all items taken from the result of the April 13, 2016, search, and to suppress the evidence obtained as a result of the search of the cell phone's contents.  (R. 21: Motion to Suppress; R. 23: Supplement to Motion to Suppress).

## II.    ARGUMENT

The Fourth Amendment protects against unreasonable searches and seizures and provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  As such, a warrant may not issue absent probable cause, which requires a reasonable basis for believing that evidence of crime will be found in a particular place under the totality of the circumstances.  Illinois v. Gates, 462 U.S. 213, 230-35 (1983).  "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched."  United States v. Besase, 521 F.2d 1306, 1307 (6th Cir. 1975).  The degree of certainty required in an affidavit in support of a search warrant is not measured by a "more likely than not" inquiry.  Greene v. Reeves, 80 F.3d 1101, 1105 (6th Cir. 1996) (reversing district court's finding of no probable cause, holding it erred in applying a preponderance standard to the determination).  But see United States v. Bass, 785 F.3d 1043 (6th Cir. 2015) (totality of circumstances supported claims in search warrant affidavit that evidence of fraud would be discovered in defendant's cell phone).

Reasonable grounds for belief that there is probable cause is "supported by less than prima facie proof but more than mere suspicion."  United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted).  In making a probable cause determination, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238; see also United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998), cert. denied, 525 U.S. 1086 (1999)  An affidavit is "judge on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000).  Search warrants are, therefore, judged on the totality-of-the-circumstances.  Id. at 307 (citing Gates, 462 U.S. at 239).

### A.      The Nexus Requirement

To support "a finding of probable cause, there must be a 'sufficient nexus' between the place searched and the evidence sought."  United States v. Kenny, 505 F.3d 458, 461 (6th Cir. 2007) (citing United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004)).  "[W]hether a sufficient nexus has been shown to a particular location turns in part on the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere, and the normal inferences that may be drawn as to likely hiding places."  United States v. Savoca, 761 F.2d 292, 298 (6th Cir. 1985).  See also United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir.), cert. denied, 537 U.S. 1130 (2002).  Probable cause does not require an actual showing of criminal activity at a particular location, but a "probability or substantial chance of criminal activity."  United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991).

7

Davis claims that the affidavit failed to provide a nexus between his criminal activity and the residence.  This critical analysis of what the subject affidavit allegedly lacks is not the proper basis for review.  Allen, 211 F.3d at 975.  Nevertheless, the affidavit provided the judge with a substantial basis for concluding that the search would uncover evidence of criminal activity as required by Fourth Amendment.  See Gates, 462 U.S. at 238.

In this case, the affidavit clearly reflects that prior to the death of Castro-White, Karaplis and Castro-White made contact with a person known as "Red" through phone number 216-526-8810.  This will be confirmed through Detective Sivert's testimony that prior to securing the warrant, he had uncovered evidence that caused him to believe that Castro-White contacted Karaplis for the purpose of obtaining drugs.  Phone records and Castro-White's phone demonstrated this to Detective Sivert.  Other evidence determined that Karaplis then contacted "Red" by dialing 216-526-8810.  Detective Sivert learned this through discussions with Karaplis who told Detective Sivert this.  Detective Sivert, prior to applying for the instant warrant, corroborated this information by taking several investigative steps.  He took a verbal description of the residence from Karaplis and then had him look at "Google Earth" as Karaplis identified the target residence as "Red's" residence.  Karaplis also described this residence as the residence that he and Castro-White went to in order to purchase the drugs just before Castro-White's death.  Karaplis described a vehicle he knew to be associated with the residence and with "Red" to Detective Sivert.  Detective Sivert personally went to the target residence and saw a vehicle at the residence matching the description.  Sivert ran an OHLEG search and discovered that it was titled to Russell Davis.  Just before the warrant was secured on April 12, 2016, Sivert again met with Karaplis and at that time Karaplis showed Detective Sivert a text he had just received from "Red" using phone number 216-526-8810.  This again confirmed to Detective Sivert that phone

number 216-526-8810 was still being used by "Red".  Furthermore, at that time and prior to the securing of the search warrant, Detective Sivert witnessed Karaplis placing a "controlled call" to phone number 216-526-8810 (Target Phone).  During this call, which was recorded, Karaplis and Davis spoke in a conversation. "Red" questioned Karaplis about Corey Stock being "sweated" by the police about the death of Castro-White. This confirmed to Detective Sivert that this phone and any documents associated with the phone showing either calls previously made or ownership or use was important to the investigation.  Furthermore, Detective Sivert personally saw the vehicle titled to Russell Davis at the target residence which corroborated Karaplis statement that the residence was where "Red" operated from.

Based on these facts and circumstances, a neutral, detached magistrate could reasonably conclude that the **phone and/or records relating to the phone** would contain evidence of drug trafficking.  See Besase, 521 F.2d at 1307.  This Court has repeatedly found probable cause to search a drug dealer's residence when the evidence sought is related to drug trafficking activities. United States v. Gunter, 551 F.3d 472, 481 (6th Cir. 2009) (reasonable to infer that evidence of drug trafficking would be found at residence of drug dealer); Miggins, 302 F.3d at 393-94 (although defendant, a known drug dealer, was arrested with drugs at another location, there was sufficient nexus to establish probable cause for a search warrant of his residence); United States v. Jones, 159 F.3d 969, 974-75 (6th Cir. 1998); United States v. Caicedo, 85 F.3d 1184, 1193 (6th Cir. 1996).

As stated above, investigators had determined that Davis used cellular phone number 216-526-8810 during his contacts with Karaplis regarding the purchase of heroin.  Furthermore, this purchase had taken place at the target residence. Investigators knew that both Karplis and Stock had purchased drugs from "Red" and each had identified the area of the residence.

Karaplis identified the exact residence and a vehicle at the residence which were found to be "Red's" residence and vehicle.  Stock, prior to the warrant, described knowing "Red" as a drug dealer and identified the general area of Red's residence.  Furthermore, just prior to securing the search warrant, Davis sent a text message to Karaplis using this number.  Not only did investigators have reason to believe that Davis' phone would contain evidence of drug trafficking based on the contacts between Davis and Karaplis and dealings with Stock, they were aware that Davis had a lengthy criminal record which included drug trafficking which was relayed to the issuing magistrate.  Furthermore, Detective Sivert went to the target residence location and physically saw the car titled to Russell Davis present.  Thus, it was reasonable to infer that phone documents related to the ownership and or control of the phone and or the actual phone itself  would likely contain evidence of drug trafficking and these items would be in the residence.

**B.     Statements Made to Magistrate on Record That Were Not Part of the Affidavit.**

"The Fourth Amendment does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." United States v. Shields, 978 F.2d 943, 94 (6th Cir. 1992) (citation omitted) (upholding search warrant supplemented by sworn, unrecorded oral statements; Rule 41(c)(1) does not apply where no federal officers are involved).  It is expected that both Detective Sivert and then Magistrate Cook will offer testimony that they discussed the case at the time of the securing of the warrant.

**C.     The Information Contained in the Affidavit Was Not Stale.**

Davis complains that the search warrant was based on stale evidence.  The probable cause requirement for a search warrant "is concerned with facts relating to a presently existing condition."  United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006) (quotation marks and

10

citation omitted).  "Thus the critical question is whether the information contained in the affidavit, when presented to the . . . judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]."  Id. (quotation marks and citation omitted).  The length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling.  Id.  In fact, "It is possible that even if a substantial amount of time has elapsed between a defendant's last reported criminal activity and the issuance of the warrant, the warrant had not been stale."  Id.  (quotation marks and citation omitted).

Staleness is not judged solely by the passage of time.  Indeed, the Sixth Circuit has established four factors for measuring staleness: "(1) the character of the crime, (2) the criminal, (3) the thing to be seized, and (4) the place to be searched."  Archibald, 583 F.3d at 558 (citing Abboud, 438 F.3d at 572-73).  An examination of each of these factors in this case makes clear the information in the affidavit was not stale.

Here, the affidavit explained that Davis was involved with suspected drug trafficking.  The Sixth Circuit has found the distribution of illegal drugs to be a long-term criminal operation.  See United States v. Spikes, 158 F.3d 913, 923-24 (6th Cir. 1998); United States v. Young, 847 F.3d 328, 347 (6th Cir. 2017

The government acknowledges that drugs are often bought, "sold and consumed in a prompt fashion," information regarding the presence of drugs at a particular location "goes stale very quickly."  Frechette, 583 F.3d at 378.  Here, however, investigators did not seek or obtain a search warrant to seize drugs on the basis that drugs would be located at Davis' residence.  Instead, the search warrant sought seizure of Davis' cellular telephone and records and documents identifying the owner of the phone and persons living at 1832 Garden Avenue,

11

because investigators believed the phone to be an instrument of Davis' drug trafficking business. Since the search was based on indicia of drug trafficking more enduring than drugs, i.e., Davis' cellular telephone and records or documents, a greater lapse of time between the information relied upon and the request for a search warrant is permissible.  See United States v. Burney, 778 F.3d 536, 541 (6th Cir. 2015) (evidence that is not readily consumable and that is of enduring utility to its holder is unlikely to be consumed or to disappear).

Here, the place to be searched was Davis' residence, a secure operational base where Karaplis, Stock, and Castro-White purchased heroin from Davis.  The Sixth Circuit has held that an issuing judge may infer that drug traffickers, such as Davis, use their homes to store drugs and otherwise further their drug trafficking. United States v. Miggins, 302 F.3d 384, 393-94 (6th Cir. 2002); United States v. Caicedo, 85 F.3d 1184, 1193 (6th Cir. 1996).

Additionally, more recent events related in the affidavit can refresh otherwise stale information.  Here, the affidavit explained that just prior to the securing of the warrant, Davis sent a text message to Karaplis using the number of the phone in question.  See United States v. Greene, 250 F.3d 471, 481 (6th Cir. 2001) (warrant issued twenty-three months after informant's last drug purchase not stale where drug trafficking activity was ongoing because "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness.").

**D.      This Court is Not Precluded from Applying the Good Faith Exception.**

Even if this Court disagrees with the government, the officers had a good faith basis to believe that the warrants were valid.  The search survives in light of United States v. Leon, 468 U.S. 897 (1984), because the officers had a good faith basis to believe the warrant issued was valid.  Leon determined, "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot

12

justify the substantial costs of exclusion." The <u>Leon</u> Court took pains to "emphasize" that the "standard of reasonableness we adopt is an objective one." <u>Id.</u> at 919 n. 20. <u>See</u> <u>also</u> <u>Davis v. United States</u>, 564 U.S. 229, at 238-39 (2011); <u>United States v. Brooks</u>, 594 F.3d 488, 496 (6th Cir. 2010); <u>United States v. Frechette</u>, 583 F.3d 374, 381 (6th Cir. 2009). Reliance on the warrant here was objectively reasonable. Under the good faith exception to the exclusionary rule announced in <u>Leon</u>, suppression of evidence seized under a search warrant generally is not justified except:

> 1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; 2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid.

<u>United States v. Thomas</u>, 605 F.3d 300, 311 (6th Cir. 2010); <u>Leon</u>, 468 U.S. at 923. None of those factors are present here.

First, despite Davis' allegations to the contrary, the affidavit did not contain any intentional or reckless falsehoods. Davis offers only conclusory statements and offers no evidence in support of his claim that the affidavit contained false information. Suppression should be ordered only in those unusual cases in which exclusion will further the purposes of the exclusionary rule. <u>United States v. Baxter</u>, 889 F.2d 731, 734 (6th Cir. 1989) (upholding motion to suppress where although affiant officer's misrepresentation of informant's credibility did not reach the level of "reckless falsity," his "knowing misstatement" along with insufficient independent verification resulted in "bare bones" affidavit). Suppression is unwarranted here because Karaplis was not a confidential informant, he was a named witness in a criminal

investigation. The search warrant was not made pursuant to an unreliable informant's tip. Instead, it arose from a police investigation following an overdose death.

In his supplement to his motion to suppress, Davis argues that the affidavit contained a material omission because it did not include any information about Karaplis' credibility as an informant.  It is an important distinction here that Karaplis was not a confidential source, but, rather a named witness in a criminal investigation following Castro-White's death.  In other words, this case does not involve an unidentified informant whose credibility can only be judged on paper.  To be sure, an informer is one who furnishes law enforcement officials with information of legal violations.  Rovario v. United States, 353 U.S. 53 (1957).  While in a broad sense, Karaplis did provide investigators with information pertaining to violations of the law, he did not fulfill the classic role of a confidential informant, who typically "help[s] to set up the commission of the crime and who [i]s present at its occurrence."  Id. at 61. Furthermore, as described above, Detective Sivert verified a number of aspects of Karaplis' statements through follow-up investigation prior to the authorization of the warrant.

The affidavit was not based solely on information provided by Karaplis but information obtained by police investigation.  Moreover, any facts about Karaplis and his contradictory statement are immaterial to whether the affidavit was sufficient to give the issuing judge a substantial basis to find probable cause.  See United States v. Archibald, 685 F.3d 553, 557 (6th Cir. 2012).

The Sixth Circuit has held "that a known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past"— particularly "when the known informant's decision to go to police has also subjected her to

14

potential prosecution." United States v. Kinison, 710 F.3d 678 (6th Cir. 2013); United States v. Jackson, 470 F.3d 299, 307-08 (6th Cir. 2006); United States v. Pinson, 321 F.3d 558, 563 (6th Cir. 2003); United States v. Tuttle, 200 F.3d 892, 894 (6th Cir. 2000). Additionally, the fact that Karaplis admitted to a crime has been considered an "indicia of reliability" of the information provided.  United States v. Harris, 403 U.S. 573, 583 (1971); United States v. Czuprynski, 46 F.3d 560, 564 (6th Cir. 1995).

Moreover, even if this court considers Karaplis to be an informant in the traditional sense, where a search warrant affidavit relies on information from an informant and the information's reliability is uncertain, a finding of probable cause can be made where police have independently corroborated significant parts of the informant's story.  United States v. Thomas, 605 F.3d 300, 307-08 (6th Cir. 2010).  Corroboration of "innocent facts" provided by an informant is sufficient; it is not necessary that there be corroboration of the criminal conduct itself. Gates, 462 U.S. at 243–44; see also Alabama v. White, 496 U.S. 325, 331–32 (1990); United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991) (although no drugs or evidence was observed at the residence, a "pattern of activity" consistent with drug trafficking was sufficient to establish probable cause for a search warrant).  The requirements of the Fourth Amendment are satisfied provided the judicial official had a substantial basis for concluding that a search would uncover evidence of wrongdoing.  Gates, 462 U.S. at 238.  The affidavit here provided the judge with a substantial basis for concluding that the search would uncover evidence of criminal activity as required by Fourth Amendment.

Davis also complains that there is no mention of "Corey" in the affidavit.  It is not necessary for police to include information as to every possible lead or witness in the case in an affidavit.  Indeed, Davis' criticism of what the affidavit does not contain is of no moment

15

because an affidavit supporting a search warrant application is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." Allen, 211 F.3d at 975.

Second, there is no allegation that the issuing magistrate was not neutral and detached in evaluating the affidavit. Third, as discussed above, the affidavit was not so lacking in indicia of probable cause that no reasonable officer could rely on it. Fourth, there is no allegation that the warrant is facially deficient in any way. See United States v. Schultz, 14 F.3d 1093, 1098 (6th Cir. 1994) (insufficient nexus between suspected drug dealer and bank safe deposit box, but motion to suppress evidence denied under "good faith exception"); Carpenter, 360 F.3d at 596 (collecting cases in which this Court "previously found Leon applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause); United States v. Moore, 661 F.3d 309 (6th Cir. 2011).

This Court is not precluded from applying the good faith exception to the warrant requirement, because the affidavit was not so lacking in probable cause as to render the officers' belief in its existence entirely unreasonable. The search survives in light of Leon because the officers had a good faith basis to believe the warrant issued was valid. Thus, the officers were entitled to rely on the warrant in good faith and, accordingly, "the harsh sanction of exclusion 'should not be applied to deter objectively reasonable law enforcement activity.'" Davis, 564 U.S. at 241 (quoting Leon, 468 U.S. at 919).

### E.     A Franks Hearing is not Justified.

In his supplement to his motion to suppress, Davis claims that the affidavit did not establish probable cause because of "material omissions and intentionally false statements."  (R. 23: Supplement, p. 2).  Davis claims the affidavit failed to include any statements regarding Karaplis' credibility or indicating that information provided by Karaplis' was corroborated.  He further complains that the affidavit omits any reference to statements that would undermine Karaplis' credibility and that there are no references to Corey.  Davis further argues that the affidavit falsely represents his interactions with Castro-White.  (Id., p. 9).  Accordingly, Davis requests a hearing under Franks v. Delaware, 438 U.S. 154 (1978).

A Franks hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity of the challenged statements in the search warrant affidavit.  United States v. Keszthelyi, 308 F.3d 557, 566-68 (6th Cir. 2002); United States v. Jenkins, 728 F.2d 396, 397 (6th Cir. 1984).  "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 155-56; see also Keszthelyi, 308 F.3d at 566.

In order to obtain a Franks hearing, a defendant must meet a two-pronged test.  First, a defendant must make a substantial preliminary showing that specified portions of the affiant's statements (not the informant's) are deliberately or recklessly false. Franks, 438 U.S. at 172; United States v. Graham, 275 F.3d 490, 505 (6th Cir. 2001); United States v. Hill, 142 F.3d 305, 310 (6th Cir. 1998).  "[T]he challenger's attack must be more than conclusory and must be

supported by more than a mere desire to cross-examine.  There must be allegations of deliberate

falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an

offer of proof ... Affidavits or sworn or otherwise reliable statements of witnesses should be

furnished, or their absence satisfactorily explained."  Franks, 438 U.S. 154, 171; United States v.

Archibald, 685 F.3d 553, 558-59 (6th Cir. 2012) (district court may not consider the veracity of

an affidavit underlying a valid search warrant unless the defendant first makes a proper showing

of falsity for a Franks analysis).

Second, the court must find that the challenged statements are necessary to a finding of

probable cause.  Id.  The Sixth Circuit has elaborated upon the Franks standard as follows:

> A defendant who challenges the veracity of statements made in an
> affidavit that form the basis for a warrant has a heavy burden. His
> allegations must be more than conclusory. He must point to
> specific false statements that he claims were made intentionally or
> with reckless disregard for the truth. He must accompany his
> allegations with an offer of proof. Moreover, he should also
> provide supporting affidavits or explain their absence. If he meets
> these requirements, then the question becomes whether, absent the
> challenged statements, there remains sufficient content in the
> affidavit to support a finding of probable cause.

United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990) (citations omitted).  Only if a

defendant shows the affiant knowingly and intentionally, or with reckless disregard for the truth,

included a false statement in his affidavit, is the false material set aside and the affidavit

reviewed on the basis of the remaining content for sufficiency.  See Franks, 438 U.S. at 155–56.

"Under Franks, suppression is required only when the affiant deliberately lied or testified in

reckless disregard of the truth."  United States v. Giacalone, 853 F.2d 470, 477 (6th Cir. 1988).

A defendant has burden of establishing deliberate falsehood or reckless disregard for truth by

preponderance of the evidence. Franks, 438 U.S. at 156.

18

The omission of the fact that a witness in a criminal investigation gave a prior inconsistent statement (i.e., not a confidential informant) is not enough for a Franks hearing. United States v. Rose, 714 F.3d 362, 370 (6th Cir. 2003) (inconsistencies among victims' versions of the events in police interviews did not establish that the statements in the officer's affidavit were in fact false). Davis simply does not "provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth." United States v. Archibald, 685 F.3d 553 (6th Cir. 2012) (quoting United States v. Mastromatteo, 538 F.3d 535, 545 (6th Cir. 2008)). Thus, he fails to establish that he is entitled to a Franks hearing.

## III.    CONCLUSION

For the foregoing reasons the government respectfully requests that this Honorable Court deny Davis' motion to suppress and his supplemental motion to suppress. The April 12, 2016, search warrant provided probable cause of criminal activity and was executed in good faith. The April 18, 2016, search warrant was not obtained as a result of improperly gathered evidence, and is therefore not the fruit of the poisonous tree. For all of the forgoing reasons, Davis' motion to suppress evidence is properly denied without a Franks hearing.

Respectfully submitted,

DAVID A. SIERLEJA
Acting United States Attorney

By:    s/Robert F. Corts
        Robert F. Corts
        Vasile C. Katsaros
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3957
        (216)622-3876

19

## CERTIFICATE OF SERVICE

I hereby certify that on May ___, 2017, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.  Parties may access this filing through the Court's

system.

s/Robert F. Corts
Robert F. Corts
Assistant U.S. Attorney