```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                  EASTERN DIVISION AT CLEVELAND

 3
      UNITED STATES OF AMERICA,        CASE NO. 1:16-cr-260
 4
                    Plaintiff,
 5
           vs.                         FRIDAY, MAY 4, 2018
 6

 7    RUSSELL DAVIS,

 8              Defendant.             VOLUME 9, PAGES 1 - 23

 9

10
                     TRANSCRIPT OF TRIAL BY JURY
11          HELD BEFORE THE HONORABLE CHRISTOPHER A. BOYKO
                    UNITED STATES DISTRICT JUDGE
12

13
      APPEARANCES:
14
      For the Plaintiff:        Robert F. Corts,
15                              Vasile C. Katsaros,
                                Assistant United States Attorneys
16

17
      For the Defendant:        Edward G. Bryan, Esq.
18                              Darin Thompson, Esq.

19

20    Official Court Reporter:  Lance A. Boardman, RDR, CRR
                                United States District Court
21                              801 West Superior Avenue
                                Court Reporters 7-189
22                              Cleveland, Ohio 44113
                                216.357.7019
23

24
      Proceedings recorded by mechanical stenography; transcript
25    produced by computer-aided transcription.
```

1              <u>Table of Contents</u>

2

3    <u>Witnesses/Events</u>                                    <u>Page</u>

4    JURY QUESTION NUMBER 4                                  3

5    MOTION HEARING                                          4

6    VERDICT                                                19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

**Jury Question No. 4**

| | |
|---|---|
| 10:11:29 | 1 |

(In Chambers.)

JURY QUESTION NUMBER 4

THE COURT:  We're in chambers with counsel.
Mr. Katsaros is in Youngstown, but he is with us via
smartphone in Mr. Corts' hands.

So we have received a fourth question from the jury,
which reads as follows:

"Can we have the academic papers presented by the
prosecution and defense?"

Signed by the foreperson, dated 5/4/18.

We've had discussions about this question.  There is
disagreement between the parties, and therefore the Court
has decided on this response, which will read as follows:

"Ladies and gentlemen, I have received your fourth
question and have shared it with counsel.  The Court
responds as follows:

"The academic papers were not admitted into evidence,
and therefore they are not exhibits which you may have.
However, you may consider the testimony from the experts
relating to the academic papers.

"Please continue with your deliberations."

Mr. Corts, on behalf of the Government?

MR. CORTS:  Your Honor, our position -- we
have no problem with your response.  Our position is,
though, that it was a simple question, "Can we have the

**Motion Hearing**

10:12:53  1    academic papers presented by the prosecution and defense."

10:12:56  2    Our proposed answer would be, "No.  They're not admitted as

10:13:01  3    exhibits."

10:13:01  4                    THE COURT:  Okay.  Mr. Thompson?

10:13:05  5                    MR. THOMPSON:  Thank you.  The defense would

10:13:07  6    request additional language in that response indicating that

10:13:10  7    they may consider not only the testimony of the experts

10:13:13  8    regarding those articles but also the portions of the

10:13:15  9    articles that were read into the record.

10:13:18  10                   THE COURT:  Okay.  Objections are noted on

10:13:20  11   both sides.  That's the Court's response.  This will go back

10:13:24  12   to the jury.

10:13:25  13                   MR. CORTS:  Thank you, Judge.

10:13:39  14                   THE COURT:  All right.  You want to waive the

10:13:40  15   presence of your client when you make your oral motion for a

10:13:43  16   mistrial?

10:13:55  17                   MR. BRYAN:  Yes.

10:13:55  18                   (Off-the-record discussion.)

10:14:03  19                        MOTION HEARING

10:14:08  20                   MR. BRYAN:  Judge, I've actually gone back and

10:14:11  21   forth on this quite a bit.  I think in an abundance of

10:14:17  22   caution though -- in fact, when we were told that the jury

10:14:19  23   had another question before coming up here, obviously I

10:14:23  24   didn't know what the question was.  I thought maybe it could

10:14:28  25   have been based upon their condition yesterday that we're

**Motion Hearing**

10:14:30  1   not going to be able to reach a decision as it relates to

10:14:34  2   the specification.  And in that case I was going to not make

10:14:38  3   a motion at that time.  I was just going to -- because I

10:14:41  4   think we preserved the record yesterday as it related to

10:14:44  5   that issue, that we're sort of beyond that point if they

10:14:48  6   were hung on the death specification.

10:14:51  7       But since that appears to still be in play, I think

10:14:55  8   out of an abundance of caution I need to make a better

10:14:58  9   record than I made yesterday.

10:14:59  10              THE COURT:  Go ahead.

10:15:00  11              MR. BRYAN:  So that's what I'm attempting to

10:15:02  12  do right now.

10:15:02  13      Prior to the jury being instructed in this case, we

10:15:07  14  requested the Court to not put in the standard "on or about"

10:15:12  15  instruction that's typical in just about every case.  And we

10:15:17  16  raised the specificity of the charges and the allegations in

10:15:20  17  this case.  And the Court agreed that the "on or about"

10:15:25  18  instruction shouldn't go back based upon not only the

10:15:28  19  specificity in the pleadings but how the case was presented

10:15:31  20  very specifically to a specific date and time as it related

10:15:35  21  to a transaction that the Government alleged resulted in the

10:15:38  22  death of Jacob Castro-White.

10:15:42  23      The jury yesterday afternoon requested some guidance

10:15:46  24  as it related to "on or about," you know, how do they

10:15:50  25  interpret "on or about" as it relates to Count 1 in the

**Motion Hearing**

10:15:53  1    indictment because that language was still in the

10:15:56  2    indictment.

10:15:57  3        At that time, the Court initially felt -- well,

10:16:03  4    obviously the judge is here and can correct me if I'm wrong.

10:16:07  5    But as we were sort of thinking out loud, there was some

10:16:11  6    discussion that the jury should just be instructed that all

10:16:15  7    the evidence was presented towards March 7th at 12:34 a.m.

10:16:20  8    That's the time period that you should consider when you're

10:16:22  9    considering "on or about."

10:16:25  10       Mr. Katsaros made a very strong plea against that, and

10:16:30  11   then the Court changed a little bit and wrote what I will

10:16:36  12   acknowledge is a very craftily drafted response to the

10:16:44  13   jurors' question, specifically -- it's already part of the

10:16:48  14   record, but it's part of my motion.  I'll read it into the

10:16:50  15   record.  That "'on or about' must be viewed and framed in

10:16:53  16   light of all the evidence the jury must reasonably consider

10:16:55  17   in reaching a verdict on Count 1 and, if applicable, the

10:16:58  18   death enhancement.  Please continue with your

10:17:01  19   deliberations."

10:17:02  20       The jury then did continue with their deliberations,

10:17:06  21   and later in the day they announced that they were -- in

10:17:10  22   essence reached an impasse on a count under consideration

10:17:14  23   without knowing exactly which count or -- that they had

10:17:20  24   reached an impasse.  The jury -- the Court requested the

10:17:24  25   jury if they had reached a verdict on Count 1, the

**Motion Hearing**

10:17:28  1   underlying trafficking charge, which the jury returned and

10:17:31  2   said that they had reached a verdict on Count 1, but they

10:17:35  3   were at an impasse as it related to the specification.

10:17:38  4        I went home and basically couldn't sleep about this

10:17:45  5   issue because I felt that although it certainly wasn't as

10:17:50  6   bad as just giving the traditional "on or about"

10:17:54  7   instruction, the language I think that was given to the

10:17:58  8   jury, the fact that it wasn't narrowed to that specific date

10:18:01  9   and time, left open the possibility that the jury -- members

10:18:06  10  of the jury could cobble together a finding of guilt based

10:18:10  11  upon multiple theories, one of which would be if the jurors

10:18:13  12  determined the Government proved beyond a reasonable doubt

10:18:15  13  that Mr. Davis distributed drugs on March 7 at 12:34, but

10:18:22  14  also if the jury determined beyond a reasonable doubt that

10:18:24  15  Mr. Davis distributed drugs at other times, that could be

10:18:27  16  construed as on or about March 7.

10:18:30  17       So I went back and I looked at the evidence in the

10:18:32  18  case, and the most recent alleged transaction that was

10:18:37  19  presented in the evidence was the transaction that began on

10:18:41  20  the morning of March 6, 2016, and that in essence

10:18:47  21  consummated with a text message from Corey Stock to Jacob

10:18:53  22  Castro-White at 1:10 in the afternoon on March 6.

10:18:57  23       And in that text message, Corey Stock said to

10:19:02  24  Castro-White, "Here."  And it was clear from the earlier

10:19:05  25  text messages that he was going purportedly to grab drugs

**Motion Hearing**

10:19:09  1    from Mr. Davis to bring back to him.  And so it appears to

10:19:16  2    me that the most recent in time to the March 27, '16, 12:34

10:19:24  3    transaction was that March 6 at 1:10 in the afternoon.

10:19:31  4         We know from the record in the case that

10:19:34  5    Mr. Castro-White, we don't know what he did that specific

10:19:36  6    afternoon, but we do know that later that evening he met

10:19:40  7    with his girlfriend and they went out to dinner and they

10:19:42  8    went to a movie, and they also went to a -- they came back

10:19:46  9    to his home and they were watching television, fell asleep

10:19:49  10   in the basement.

10:19:50  11        Also, according to the testimony, at around 10:00 Miss

10:19:54  12   Litz went home, and Mr. Castro-White went to his friend

10:19:59  13   Donny Buchs' house.

10:20:01  14        While he was at Donny Buchs' house, he came into

10:20:03  15   contact with Harry Karaplis around 11:30, 11:20, 11:30,

10:20:09  16   where then it was discussed they would attempt to go acquire

10:20:13  17   drugs from Mr. Davis.  And so then the scene of events that

10:20:17  18   occurred were texting back and forth, calling back and

10:20:19  19   forth, attempts to contact Mr. Davis throughout the rest of

10:20:24  20   the hours on March 6, spilling over into the early morning

10:20:27  21   hours of March 7.

10:20:28  22        The evidence is clear that Castro-White picked up

10:20:35  23   Karaplis around 12:16 a.m.  It's also clear that cell tower

10:20:42  24   information put them in the vicinity of Davis's residence

10:20:46  25   and also the vicinity of another known source of supply,

**Motion Hearing**

10:20:49  1   Erika Matus, at around 12:34, when the last telephone call

10:20:54  2   was made to Mr. Davis.  And then nothing, at least no

10:20:58  3   telephone records existed of anything happening after that.

10:21:02  4        The Government's only evidence presented at trial was

10:21:04  5   that Harry -- through the testimony of Harry Karaplis was

10:21:10  6   that Mr. Karaplis took the drugs to Castro-White's house

10:21:14  7   first and they used -- or Castro-White used and then they

10:21:19  8   went to Harry Karaplis's mother's house.  Karaplis used and

10:21:21  9   then Karaplis said he fell out and then woke up a couple

10:21:24  10  hours later to know that Castro-White had left.

10:21:26  11       I've never -- or we argued our Rule 29 motion.  I'm

10:21:33  12  not arguing at this point that that was insufficient

10:21:34  13  evidence or anything like that.  But the point is is that

10:21:37  14  Castro-White was then found dead at 6:50 a.m.  So I think

10:21:45  15  when this case was so not only specifically charged but

10:21:48  16  specifically pled, when we didn't keep the jury on that

10:21:52  17  transaction of events, the jury was free to speculate beyond

10:21:59  18  sort of the parameters of the case in determining whether or

10:22:04  19  not Mr. Davis committed drug trafficking on or about.

10:22:10  20       When the jury came back and said that they were

10:22:13  21  deadlocked, that they'd reached a verdict on Count 1 but

10:22:16  22  were deadlocked on Count 2, my fear is that they could have

10:22:19  23  cobbled together a finding of guilt on Count 1 from

10:22:25  24  drug-related activity that took place on March 6 and then

10:22:28  25  drug-related activity that took place on March 7.

**Motion Hearing**

10:22:31  1        My concern about if they cobble together drug-related

10:22:34  2    activity that took place on March 6 is twofold.  The first

10:22:40  3    thing is is I'm not sure that that would have withstood a

10:22:44  4    challenge -- if that was charged as a separate count, if

10:22:48  5    that could have withstood a challenge for sufficiency of

10:22:50  6    evidence, most notably because we don't know the chemical

10:22:55  7    composition of the drugs that were distributed that day

10:22:58  8    because we don't have a sample of the drugs that were

10:23:00  9    distributed that day, and this case is very specifically

10:23:05  10   charged as a distribution of Fentanyl case.  There's no

10:23:11  11   allegation of distribution of heroin/Fentanyl or heroin

10:23:14  12   and/or Fentanyl.  It's specifically charged as a

10:23:17  13   distribution of Fentanyl case.

10:23:19  14             MR. CORTS:  Mixture of substance.

10:23:21  15             MR. BRYAN:  Or mixture of substance containing

10:23:24  16   a detectable amount of Fentanyl.  But we don't know if there

10:23:28  17   was Fentanyl in drugs that were never tested.  I'm not sure.

10:23:30  18   Government could argue, well, there was Fentanyl in

10:23:34  19   Castro-White's urine, which means that he was using Fentanyl

10:23:36  20   before.  All I would point to is that there were other

10:23:40  21   sources of supply, although of course the Government's focus

10:23:44  22   was entirely on Mr. Davis.

10:23:45  23       So that's my concern for just the jury being able to

10:23:51  24   consider that other acts evidence as the substantive

10:23:56  25   evidence of Mr. Davis's trafficking activity.

**Motion Hearing**

10:24:00  1    But I think the concern is larger as it relates to the

10:24:03  2  specification, the death specification.  And that concern is

10:24:07  3  is that there's literally zero evidence in the record that

10:24:11  4  anything that Castro-White obtained at 1:10 p.m. on March 6

10:24:18  5  was ingested by him which resulted in his death.  And the

10:24:23  6  Government may argue that he could have stored or hoarded

10:24:26  7  the drugs only to be used later.  I would submit for the

10:24:33  8  Court that doing so is rank speculation and that that type

10:24:38  9  of speculation should not be able to be relied upon when

10:24:43  10  we're talking about the specificity required by United

10:24:49  11  States/Burridge that the drug has to be the but-for cause of

10:24:53  12  the individual's death.

10:24:54  13    The only drug in this instance, if the jury believes

10:24:58  14  the testimony of Harry Karaplis or believes that -- beyond a

10:25:03  15  reasonable doubt that Karaplis grabbed drugs from Mr. Davis

10:25:06  16  that night, that could even meet the Burridge test of being

10:25:12  17  the but-for cause of the -- the cause of death of Jacob

10:25:18  18  Castro-White were drugs that were seized -- or allegedly

10:25:21  19  obtained on March 7 at 12:34 a.m.

10:25:28  20    To think that Jacob Castro-White, a known heroin

10:25:32  21  addict, would hold onto a small amount -- I believe that

10:25:35  22  transaction was a 30 or $40 transaction -- a small amount of

10:25:41  23  heroin to use later goes against the evidence in this case.

10:25:45  24  In addition to the fact that at 7:30 that evening he had a

10:25:48  25  telephone conversation with Corey Stock wherein he was

**Motion Hearing**

10:25:55   1   disappointed that Corey Stock had made another drug run to

10:25:59   2   Russell Davis's house without him.  So if he still had drugs

10:26:01   3   from earlier in the day from Russell Davis, I would not

10:26:05   4   think that that would have came off as such a disappointment

10:26:08   5   to him.

10:26:10   6        Also, in addition to the fact that he actually was

10:26:13   7   seeking drugs from Mr. Davis in the early morning hours of

10:26:15   8   March 7th indicates that he did not have any other drugs,

10:26:19   9   that those drugs had already been consumed.

10:26:23   10        I think it's also relevant in this inquiry to bring up

10:26:25   11   the clear evidence from the day before on March 5 when Corey

10:26:30   12   Stock -- or, excuse me, when Jacob Castro-White received

10:26:33   13   drugs from Corey Stock and immediately texted that he had to

10:26:39   14   go back home, change into his work clothes, grab his food,

10:26:42   15   and shoot his stuff.  And clearly "shoot his stuff" meant

10:26:46   16   that he was going back home to use the heroin that he had

10:26:49   17   just received from Jacob Castro-White.

10:26:52   18        Again, if this case was standing alone a drug -- just

10:26:56   19   a general drug trafficking case without a specification, the

10:27:02   20   "on or about" instruction probably would not have even been

10:27:05   21   objected to.  The fact that this case is tied in with the

10:27:10   22   death specification I think makes this case one of those

10:27:13   23   uniquely timed cases that would fall under the Sixth

10:27:20   24   Circuit's I guess it's more dicta than anything else, in

10:27:24   25   United States vs. Neuroth.

**Motion Hearing**

10:27:28   1      But previously to that, United States vs. Henderson,

10:27:30   2  the Sixth Circuit reversed the defendant's conviction where

10:27:34   3  the "on or about" instruction was given and there was no

10:27:35   4  variation in the date of offense alleged in the indictment,

10:27:40   5  the proof presented at trial, and the defendant's alibi for

10:27:43   6  that day.

10:27:45   7      So that is still good law in the circuit.  That case

10:27:50   8  was commented upon in United States vs. Neuroth in an

10:27:56   9  en banc decision where they didn't reverse the defendant's

10:28:00  10  conviction but gave some guidance and dicta where they said

10:28:03  11  in determining whether an "on or about" instruction is

10:28:06  12  proper in a particular case, the District Court should look

10:28:08  13  at how specifically the Government alleges in its indictment

10:28:12  14  the date on which the offense occurred and compare that

10:28:15  15  proof at trial as to what date the offense occurred.  If the

10:28:20  16  indictment or proof points exclusively to a particular date,

10:28:25  17  it was be preferably for the trial judge to avoid the "on or

10:28:28  18  about" language.

10:28:29  19      And I believe that's what the Court did before it

10:28:32  20  instructed the jury generally.  But I think a bit of that

10:28:34  21  was undone by failing to instruct the jury that they can

10:28:38  22  only consider "on or about" as it relates to March 7, 12:34

10:28:45  23  a.m., because this was specifically charged in a

10:28:47  24  specifically -- presented in a specifically argued case.

10:28:51  25      In essence, what happened yesterday after Mr. Katsaros

**Motion Hearing**

10:29:01  1  articulated his position was that we widened the scope of

10:29:04  2  the case beyond the case that was even tried or defended

10:29:07  3  against and allowed the jury to reach a potentially

10:29:13  4  nonunanimous decision as it relates to the theory of

10:29:19  5  trafficking.  And I believe that fear still -- or that fear

10:29:24  6  or that possibility obviously is still at play when it comes

10:29:30  7  to the death specification.

10:29:33  8          So the jury, if they believe that they can consider

10:29:36  9  offense conduct outside of March 7th, 2016, in determining

10:29:41  10  whether or not Castro-White passed away from drugs that were

10:29:45  11  purchased on an earlier date, I think that would violate

10:29:50  12  United States vs. Jackson as it relates to sufficiency of

10:29:53  13  evidence, that there is insufficient evidence to suggest

10:29:59  14  that drugs purchased prior to March 7, 12:34 a.m., could

10:30:06  15  have been the but-for cause of Castro-White's death.

10:30:12  16          So we're asking for a mistrial on everything.  I think

10:30:17  17  perhaps in the alternative, if the jury could be instructed,

10:30:20  18  as it relates to the death specification, that their inquiry

10:30:27  19  must be restricted to March 7 and not to any other date.

10:30:33  20                  THE COURT:  Okay, Mr. Bryan.  Thank you.

10:30:35  21      Mr. Corts, on behalf of the Government?

10:30:37  22                  MR. CORTS:  Yes, Judge.  I'm not going to go

10:30:39  23  through the evidence.  I'll just respond.

10:30:42  24      As I understand, Mr. Bryan's motion is a mistrial

10:30:45  25  based upon jury instructions.

15

**Motion Hearing**

10:30:50  1          MR. BRYAN:  Well, the answer to a jury

10:30:52  2  question.

10:30:52  3          MR. CORTS:  Right, okay, the answer to a jury

10:30:54  4  question related to instructions to the jury.

10:30:58  5      So, first of all, for sufficiency, I don't think the

10:31:01  6  Court should consider any kind of sufficiency argument.

10:31:05  7  You're not precluded from raising that at any time should he

10:31:08  8  be convicted of anything.  You can raise that on appeal.

10:31:12  9      Second of all, as it relates to the jury instructions,

10:31:15  10  we had a jury instruction conference where we went through

10:31:20  11  the jury instructions page by page.  At that time, when we

10:31:26  12  went over the "on or about" instruction, each side made

10:31:33  13  arguments, the Government to keep it in, the defense to take

10:31:36  14  it out.

10:31:37  15      Ultimately, the Court decided that it was going to

10:31:40  16  take that instruction out and removed it, which at the time,

10:31:45  17  the way I recall it, either right then or at the end of the

10:31:50  18  conference, the Judge asked if there were any objections,

10:31:53  19  and there were no objections stated at that time.

10:31:56  20      There were some other things that we talked about

10:32:00  21  throughout the jury conference where we removed things or

10:32:04  22  changed things, but at the end of the conference, my

10:32:08  23  recollection was that the judge asked us all if we were in

10:32:12  24  agreement with what was going back.  And in fact, on the "on

10:32:16  25  or about" issue, the Government basically lost that issue

**Motion Hearing**

10:32:19  1  because we wanted to keep the "on or about" instruction in,

10:32:22  2  and the judge removed it.  So we didn't object -- we didn't

10:32:27  3  lodge an objection or say, Judge, we want to revisit that.

10:32:32  4  We said, okay, Judge, great.  But what I don't recall was

10:32:35  5  anything from the defense's side raising any objection to

10:32:39  6  "on or about" being included in the body of the count.  So

10:32:44  7  there was no prior objection to that.

10:32:46  8      Then the jury sends the question to the judge, define

10:32:52  9  on or about.  It's the Government's position that at that

10:32:56  10  time, a court can -- if the jury needs further instruction

10:33:03  11  on any particular term or something that wasn't defined, it

10:33:12  12  would be in the Court's discretion to then give the "on or

10:33:14  13  about" instruction then.  The Government made a vehement

10:33:20  14  argument to put it in.  The defense argued against it, and

10:33:24  15  the judge didn't put it in.

10:33:25  16      And again, I don't think that there were any real

10:33:27  17  objections lodged at that time to the question that the --

10:33:33  18  or the answer to the question that the judge sent back.

10:33:35  19      So just from points of preserving the record, the

10:33:40  20  Government states that.

10:33:41  21      Second of all, as it relates to one of the issues that

10:33:44  22  you raised, Ed, about other acts, the judge did give an

10:33:49  23  "other acts" instruction that, once again, at the jury

10:33:53  24  instruction conference no one objected to.  Quite the

10:33:57  25  opposite.  I think you guys really wanted that instruction.

10:33:59  1   The Government didn't object.

10:34:01  2       I don't think I have anything else to say, Judge.  We

10:34:06  3   would ask you to deny the defendant's motion for a mistrial.

10:34:09  4   And I'm not going to recall or recount or take issue with

10:34:16  5   some of the factual issues that Mr. Bryan raised.  Of

10:34:21  6   course, the Government may have and does have different

10:34:23  7   positions on a lot of those, but I think that's the whole

10:34:26  8   purpose of the jury and their work that they're doing.

10:34:29  9   They're back there trying to figure those out and come up

10:34:32  10  with a verdict.  Thank you.

10:34:34  11              THE COURT:  All right.

10:34:35  12              MR. BRYAN:  Just, Judge, one thing.  I did

10:34:37  13  preserve the record as it related.  I didn't want this

10:34:39  14  instruction to be read.  I wanted the jury to be instructed

10:34:42  15  that when it comes to "on or about," they must consider the

10:34:45  16  time period of March 7.  So I made that -- I think I --

10:34:50  17              MR. CORTS:  Yeah, you did, when we were here,

10:34:52  18  yes, but not at the jury conference.

10:34:55  19              MR. BRYAN:  And then when it comes to the

10:34:57  20  other acts thing, I think that's part of the problem with

10:35:00  21  widening the parameters because I think it creates this sort

10:35:02  22  of conflict between you cannot consider other acts and then

10:35:05  23  "on or about" says, well, unless they're near in time to the

10:35:09  24  event.

10:35:10  25       So this is an admittedly -- it's certainly a question

10:35:13  1   of -- it's a first impression in my career.  I'm sure it's

10:35:18  2   everybody else's.  But I think it's vital to this case, so I

10:35:25  3   think I need to preserve that.

10:35:26  4                 THE COURT:  All these questions are difficult.

10:35:27  5   I'll remind everyone that when I instructed the jury out at

10:35:29  6   Court, I called everybody to side bar and asked if there

10:35:32  7   were any objections at that point and there were no

10:35:33  8   objections.  So I want to make that clear, that I gave both

10:35:36  9   sides the opportunity to object to instructions of law after

10:35:38  10  I read them to the jury.

10:35:39  11      A couple comments.  The defense is not entitled as a

10:35:46  12  matter of law to have "on or about" removed from the jury

10:35:49  13  instructions.  I did eliminate that standard instruction,

10:35:54  14  erring on the side of caution at that time, to potentially

10:35:58  15  give the jury too much latitude.  However, when they did

10:36:01  16  raise the issue with their question, I did have to respond.

10:36:06  17  And I don't think we can ever go wrong or the Court can ever

10:36:11  18  go wrong, in my humble opinion, if I direct them back to the

10:36:14  19  evidence.  And the response is clear that the jury must

10:36:21  20  reasonably consider all the evidence in the case.  And that

10:36:24  21  includes all the instructions of law.  And I instructed them

10:36:26  22  on the evidence, what they may consider, direct,

10:36:29  23  circumstantial, and make only reasonable inferences.

10:36:34  24      The defense argument centers around the fear that the

10:36:38  25  jury may speculate, which is a fear in every case.  However,

**Verdict**

10:36:41  1    the law presumes the jury will properly follow all of the

10:36:46  2    instructions and fairly consider all the evidence.

10:36:49  3         And by your own statements, you're convinced that the

10:36:52  4    evidence only points to March 7 and it's been so argued.  So

10:36:56  5    I have no concern with my -- when my response directs the

10:37:00  6    jury to frame the time based on all the evidence.  In

10:37:03  7    essence, I directed the jury back to the instructions and

10:37:06  8    evidence as a whole, which of course includes all reasonable

10:37:09  9    inferences.  So I stand by my response.

10:37:11  10        The motion for mistrial's denied.

10:37:14  11                    MR. CORTS:  Thank you, Your Honor.

10:37:15  12                    MR. BRYAN:  Thank you, Judge.

10:37:20  13                    (Recess taken.)

03:36:46  14                    (Jury is present in open court at 3:36 p.m.)

03:36:46  15                              VERDICT

03:36:49  16                    THE COURT:  Good afternoon, everyone.

03:36:52  17        Ms. Pierce, has the jury reached a verdict?

03:36:56  18                    THE FOREPERSON:  We have, Your Honor.

03:36:58  19                    THE COURT:  Please hand the papers to

03:37:01  20    Ms. Huth.

03:37:33  21        I do have completed verdict forms.

03:37:36  22        Mr. Davis, would you please rise and face the jury.

03:37:40  23        Count 1, Question 1:  With respect to the charge in

03:37:46  24    Count 1 of the indictment for distribution of a mixture or

03:37:50  25    substance containing a detectable amount of Fentanyl, in

20

**Verdict**

| | | |
|---|---|---|
| 03:37:55 | 1 | violation of Title 21 United States Code, Section 841(a)(1) |
| 03:37:59 | 2 | and (b)(1)(C), we find the defendant, Russell Davis, guilty. |
| 03:38:04 | 3 | I have all 12 signatures, dated 5/4/18. |
| 03:38:11 | 4 | Then we move on to the enhancement question, which |
| 03:38:16 | 5 | reads:  If you find the defendant, Russell Davis, guilty of |
| 03:38:19 | 6 | Question 1, then proceed to answer Question 1A. |
| 03:38:22 | 7 | Question 1A:  Do you unanimously find that the |
| 03:38:26 | 8 | Government proved beyond a reasonable doubt that death |
| 03:38:29 | 9 | resulted from the use of Fentanyl distributed by the |
| 03:38:32 | 10 | defendant, Russell Davis? |
| 03:38:34 | 11 | Answer:  Yes. |
| 03:38:35 | 12 | I have all 12 signatures. |
| 03:38:39 | 13 | Again, dated 5/4/18. |
| 03:38:41 | 14 | And I will poll the jury. |
| 03:38:44 | 15 | Mr. Harris, are those your votes, sir? |
| 03:38:49 | 16 | THE JUROR:  Yes. |
| 03:38:49 | 17 | THE COURT:  Ms. Sekerak, are those your votes, |
| 03:38:52 | 18 | ma'am? |
| 03:38:52 | 19 | THE JUROR:  Yes, sir. |
| 03:38:53 | 20 | THE COURT:  Mr. Gregory, are those your votes, |
| 03:38:55 | 21 | sir? |
| 03:38:56 | 22 | THE JUROR:  Yes. |
| 03:38:56 | 23 | THE COURT:  Mr. Tuggle, are those your votes, |
| 03:38:58 | 24 | sir? |
| 03:38:59 | 25 | THE JUROR:  Yes, sir. |

21

**Verdict**

| | | |
|---|---|---|
| 03:38:59 | 1 | THE COURT:  Mr. Wild, are those your votes, |
| 03:39:01 | 2 | sir? |
| 03:39:01 | 3 | THE JUROR:  Yes, Your Honor. |
| 03:39:02 | 4 | THE COURT:  Ms. Pierce, are those your votes, |
| 03:39:04 | 5 | ma'am? |
| 03:39:04 | 6 | THE JUROR:  Yes, Your Honor. |
| 03:39:05 | 7 | THE COURT:  Ms. Caston, are those your votes, |
| 03:39:09 | 8 | ma'am? |
| 03:39:09 | 9 | THE JUROR:  Yes, sir. |
| 03:39:10 | 10 | THE COURT:  Mr. Angart, are those your votes, |
| 03:39:12 | 11 | sir? |
| 03:39:12 | 12 | THE JUROR:  Yes. |
| 03:39:13 | 13 | THE COURT:  Mr. Lopata, are those your votes, |
| 03:39:16 | 14 | sir? |
| 03:39:16 | 15 | THE JUROR:  Yes, Your Honor. |
| 03:39:16 | 16 | THE COURT:  Ms. Bettes -- |
| 03:39:19 | 17 | THE JUROR:  Bettes. |
| 03:39:20 | 18 | THE COURT:  -- Bettes, are those your votes, |
| 03:39:22 | 19 | ma'am? |
| 03:39:22 | 20 | THE JUROR:  Yes, sir. |
| 03:39:22 | 21 | THE COURT:  Ms. Soha, are those your votes, |
| 03:39:25 | 22 | ma'am? |
| 03:39:26 | 23 | THE JUROR:  Yes. |
| 03:39:26 | 24 | THE COURT:  And Ms. Roland, are those your |
| 03:39:28 | 25 | votes, ma'am? |

22

## Verdict

| | | |
|---|---|---|
| 03:39:29 | 1 | THE JUROR:  Yes. |
| 03:39:30 | 2 | THE COURT:  I am satisfied that after polling |
| 03:39:32 | 3 | the jury, the answers line up with the decision on the |
| 03:39:37 | 4 | verdict form and the question on the death enhancement. |
| 03:39:40 | 5 | Therefore, I will accept the jury's verdict and their |
| 03:39:44 | 6 | decision on the enhancement and enter judgment accordingly. |
| 03:39:47 | 7 | Ladies and gentlemen, again, thank you so much for all |
| 03:39:49 | 8 | your time and effort.  You're excused at this point.  I will |
| 03:39:52 | 9 | be back to speak with you shortly. |
| 03:40:12 | 10 | (The jury was excused.) |
| 03:40:13 | 11 | THE COURT:  Please be seated, ladies and |
| 03:40:15 | 12 | gentlemen. |
| 03:40:15 | 13 | All right.  Mr. Davis, you've been convicted, and |
| 03:40:24 | 14 | we're going to set a sentencing date of August 29th.  August |
| 03:40:29 | 15 | 29th, 2018, 10 a.m. |
| 03:40:33 | 16 | Mr. Corts, appear to be okay with you? |
| 03:40:35 | 17 | MR. CORTS:  Yes, Your Honor. |
| 03:40:36 | 18 | THE COURT:  Okay.  Mr. Bryan, Mr. Thompson? |
| 03:40:39 | 19 | MR. BRYAN:  It will be, Your Honor. |
| 03:40:41 | 20 | MR. THOMPSON:  Yes, Your Honor. |
| 03:40:41 | 21 | THE COURT:  Okay.  That will be the sentencing |
| 03:40:43 | 22 | date. |
| 03:40:45 | 23 | Anything else before we adjourn?  Mr. Corts, on behalf |
| 03:40:49 | 24 | of the Government? |
| 03:40:49 | 25 | MR. CORTS:  No, Your Honor.  Thank you. |

23

**Verdict**

| | | |
|---|---|---|
| 03:40:50 | 1 | THE COURT:  Okay.  Mr. Bryan? |
| 03:40:51 | 2 | MR. BRYAN:  No.  Thank you, Your Honor. |
| 03:40:53 | 3 | THE COURT:  Thanks everyone.  We are |
| 03:40:55 | 4 | adjourned. |
| 03:40:55 | 5 | Of course, the defendant is remanded. |
| 03:41:14 | 6 | (Proceedings adjourned at 3:41 p.m.) |
| | 7 | * * * * * |
| | 8 | **C E R T I F I C A T E** |
| | 9 | |
| | 10 | I certify that the foregoing is a correct transcript |
| | 11 | of the record of proceedings in the above-entitled matter |
| | 12 | prepared from my stenotype notes. |
| | 13 | |
| | 14 | */s/ Lance A. Boardman*_____ *06/07/2018* |
| | 15 | Lance A. Boardman, RDR, CRR            DATE |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |