IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:16CR260 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| RUSSELL DAVIS, | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION FOR NEW |
| Defendant. | ) | TRIAL UNDER FED. R. CRIM. P. 33 |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, Vasile C. Katsaros and Robert F. Corts, Assistant United States Attorneys, and hereby responds in opposition to defendant Russell Davis' motion to for new trial under Fed. R. Crim. P. 33.

On May 4, 2018, following a jury trial, Davis was convicted of one count of distributing a mixture or substance containing a detectable amount of fentanyl resulting in death, in violation of 21 U.S.C. § 841(a)(1) (Count 1). (R. 90: Verdict, PageID 533-34).[1] Presently before this Court is Davis' Motion for New Trial under Fed. R. Crim. P. 33.[2] For the reasons set forth below, the government believes that the motion is properly denied.

---

[1] Prior to the jury trial, Davis entered a guilty plea to one count of possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2). (R. 89: Plea Tr., PageID 502-32).

[2] The government did not oppose Davis' requests for extensions of time to file his motion for new trial under Fed. R. Crim. P. 33. (R. 94: Motion, PageID 548-50; R. 100: Motion, PageID 961-62; R. 108: Motion, PageID 2548-49; R. 109: Motion, PageID 2550-52). Therefore, Rule 33(b)'s 14-day time restriction does not apply here. See Fed. R. Crim. P. 33(b)(2).

**LAW AND ARGUMENT**

In his motion, Davis argues that this Court erred by declining to provide the jury with an instruction for proximate cause with respect to the death resulting from drug distribution enhancement, despite his admission that he did not request such an instruction. He further argues that this Court erred when it retained the phrase "on or about" in portions of the jury instructions, and when it provided an instruction on the meaning of "on or about" following a jury question during deliberations over counsel's objection. In relevant part, Fed. R. Crim. P. 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The interest of justice does not require a new trial here. For the reasons set forth below, Davis' arguments fail and his new trial motion is properly denied.

**A.     This Court properly instructed the jury regarding the death enhancement under Section 841(b)(1)(C) as no proximate cause instruction was required.**

Section 841(b)(1)(C) imposes enhanced penalties whenever a defendant distributes a controlled substance in violation of Section 841(b)(1)(C), and "death . . . results from the use of such substance." As this Court is aware, the indictment charged Davis with distributing a mixture or substance containing a detectable amount of fentanyl resulting in the death of JCW. Accordingly, at trial, this Court gave the following instruction:

> Count 1 of the indictment further alleges that death resulted from Defendant's distribution of fentanyl. The allegations of Count 1 are hereby realleged and incorporated by reference herein.
>
> It is further alleged that on or about March 7, 2016, in Lorain, Ohio, [JCW] did fatally ingest and overdose on a controlled substance; namely, fentanyl, which had been distributed by Russell Davis.
>
> For this enhanced penalty to apply, the Government must prove the additional element that the Defendant's conduct caused the death. In order to establish that the drugs distributed by the Defendant

2

> resulted in the death of JCW, the Government must prove that JCW died as a consequence of his use of the drugs, that the Defendant distributed on or about the date alleged in the indictment.
>
> This means that the Government must prove beyond a reasonable doubt that but for the use of the drugs that the Defendant provided, JCW would not have died.
>
> "But for" causation exists where death would not have occurred had the controlled substance distributed by the Defendant not been ingested by JCW.
>
> In other words, there is "but for" causation where the use or use of the controlled substance combines with other factors to produce death and death would not have occurred without the incremental effect of the controlled substance.
>
> The Government is not required to prove that the Defendant intended to cause the death of JCW or that his death was foreseeable by the Defendant or others.

(R. 106: Trial Tr., Vol. 7, PageID 2170-71). Davis does not dispute that this instruction was correct. Instead, he argues that this Court erred in declining to provide the jury with an additional instruction for proximate cause, despite his not having requested such an instruction. He is mistaken.

In Burrage v. United States, 134 S. Ct. 881 (2014), the Supreme Court made clear that where there was an enhancement under 21 U.S.C. § 841(b)(1)(C), for drug distribution resulting in death or serious bodily injury "a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." Id. at 892. Davis acknowledges the Supreme Court's holding in Burrage but argues that this Court should have also provided an instruction on proximate cause, relying on United States v. Martinez, 588 F.3d 301 (6th Cir 2009), and on a decision authored by Judge Oliver in United States v. Jeffries, No. 5:16CR180, R. 173: Order (N.D. Ohio filed Oct. 1, 2018), an unrelated district court case currently pending direct appeal.

3

In reaching his conclusion in <u>Jeffries</u>, Judge Oliver leaned heavily on <u>Martinez</u> construing the health-care fraud statute.  But that statute is part of a different statutory scheme.  In particular, it speaks generically about the link between the offense conduct and the resulting death (thus potentially inviting presumed adoption of an implied foreseeability requirement).  <u>See</u> 18 U.S.C. 1347(a) (enhanced penalty "if the violation [of the statute] results in death").  The "death results" provision in Section 841(b)(1)(C), by contrast, imposes enhanced liability for only one category of highly foreseeable deaths (deaths from the use of illegal drugs).  Thus, the provision is concerned not with drug trafficking deaths generally, but with deaths associated with drug use specifically—primarily, overdoses.  Because Congress has already made a judgment about the dangers of overdoses of scheduled controlled substances, the statutory "death results" element is satisfied when the jury finds that a drug-overdose death was in fact caused by use of the controlled substance trafficked by the defendant.  This distinctive feature of Section 841(b)(1)(C) makes it particularly inappropriate to infer an additional proximate-causation element.  Because of this atypical approach, the "death results" language in Section 841(b)(1)(C) operates differently from other federal criminal laws (including the health-care fraud statute) specifying an increased punishment where a death results from a "violation" of the statute.  As a result, no inconsistency exists between the government's contention that the "death results" provision in Section 841(b)(1)(C) omits a foreseeability requirement and the Sixth Circuit's decision in <u>Martinez</u> interpreting Section 1347(a)'s different language to import such a requirement.  Indeed, the Court in <u>Burrage</u> expressly declined to decide whether, and under what circumstances, courts should infer a proximate-cause requirement from statutory text. <u>See</u> 571 U.S. at 210.

The "death results" language in Section 841(b)(1)(C) does not incorporate a proximate cause requirement.  See United States v. Burkholder, 816 F.3d 607 (10th Cir. 2016), cert. denied, 137 S. Ct. 623 (2017); Alvarado v. United States, 816 F.3d 242 (4th Cir. 2016), cert. denied, 137 S. Ct. 492 (2016).  Indeed, Section 841(b)(1)(C) imposes no such foreseeability requirement. The statute imposes enhanced penalties whenever a defendant distributes a controlled substance in violation of Section 841(b)(1)(C) and "death . . . results from the use of such substance." 21 U.S.C. 841(b)(1)(C). A jury may find that death "result[ed]" from use of a controlled substance without making any finding of foreseeability, because for death to "result" simply means that death "arose as a consequence, effect, or conclusion" of the controlled substance's use, Webster's Third New International Dictionary 1937 (1986); see, e.g., United States v. Houston, 406 F.3d 1121, 1124 (9th Cir. 2005) (stating that the death-results language of Section 841(b)(1)(C) "unambiguously eliminates any statutory requirement that the death have been foreseeable"), cert. denied, 546 U.S. 914 (2005); United States v. McIntosh, 236 F.3d 968, 972 (8th Cir.) ("[The provision] is unambiguous and . . . giving effect to its plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement"), cert. denied, 532 U.S. 1022 (2001), overruled in part on other grounds by Burrage v. United States, 134 S. Ct. 881 (2014).

That reading accords with the provision's history. The death-results enhancements were enacted as part of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1002, 100 Stat. 3207-2—a bill that sought to increase penalties for drug distribution as a way to "send[] the clear message" that "we are no longer going to tolerate" "the insidious business of drug trafficking," especially when it results in "death or serious bodily harm." 132 Cong. Rec. 27,161 (1986) (statement of Sen. DeConcini); see, e.g., id. at 26,453 (statement of Sen. Mattingly) (advocating

5

stronger penalties to address the "crisis" and "plague" of drug abuse). It is unsurprising that a Congress motivated by these objectives chose to "put[] drug dealers and users on clear notice that their sentences will be enhanced if people die . . . from the drugs they distribute . . . regardless of whether the defendant knew or should have known that death would result." United States v. Patterson, 38 F.3d 139, 145 (4th Cir. 1994), cert. denied, 514 U.S. 1113 (1995).

That reading of the statutory language also accords with the nature of proof of causation in an overdose case under Section 841(b)(1)(C). Many statutes that impose criminal penalties based on a resulting death impose those penalties whenever death results from criminal conduct, without specifying the manner in which death must result in order for enhanced liability to attach. The death-results provision in Section 841(b)(1)(C), in contrast, imposes enhanced penalties for overdose deaths that are by their nature foreseeable to drug distributors and manufacturers: deaths from the use of substances that are controlled because they are dangerous and prone to abuse. Allowing a defendant to argue that his drug distribution was not actually dangerous, or that a particular client was by all appearances a responsible drug user, is inconsistent with the categorical conclusion that all controlled substances pose an unacceptable risk of danger.

Every court of appeals to address the death-results language in 21 U.S.C. 841(b)(1)(C) or (E) has concluded that it does not require that a jury find that a death from drug use was foreseeable. See United States v. Harden, 893 F.3d 434, 447-449 (7th Cir. 2018), cert. denied, 2018 WL 4509897 (Oct. 15, 2018); Burkholder, 816 F.3d at 614-618; Alvarado, 816 F.3d at 249-250; United States v. Webb, 655 F.3d 1238, 1254-1255 (11th Cir. 2011), cert. denied, 132 S. Ct. 1131 (2012); United States v. De La Cruz, 514 F.3d 121, 137-138 (1st Cir. 2008), cert. denied, 557 U.S. 934 (2009); Houston, 406 F.3d at 1124-1125; McIntosh, 236 F.3d at 971-974; United

6

States v. Robinson, 167 F.3d 824, 830-832 (3d Cir.), cert. denied, 528 U.S. 846 (1999); Patterson, 38 F.3d at 144-145. The Sixth Circuit has also stated, albeit in dicta, that Section 841(b)(1) "is, in effect, a strict liability statute with respect to the injury or death of another arising out of the distribution of drugs." United States v. Rebmann, 226 F.3d 521, 525 (6th Cir. 2000), overruled on other grounds by United States v. Leachman, 309 F.3d 377, 385 n.9 (6th Cir. 2002), cert. denied, 538 U.S. 969 (2003).

In sum, this Court did not err when it did not give a proximate cause instruction to the jury, one which Davis did not request. Instead, this Court properly instructed the jury solely as to but-for causation for the death resulting from drug distribution enhancement.

**B.     This Court did not err with respect to its instruction for the meaning of "on or about" or by leaving references to "on or about" in the jury instructions.**

When instructing the jury, this Court did not provide the jury with the Sixth Circuit pattern instruction 2.04 for "on or about," at counsel's request. That instruction explains that while the indictment alleges that the crime charged happened "on or about" certain dates, "[t]he government does not have to prove that the crime happened on that exact date. But the government must prove that the crime happened reasonably close to that date." (Sixth Circuit Pattern Criminal Jury Instructions, 2017 Edition, Section 2.04). Elsewhere, however, the phrase "on or about" was contained in portions of the jury instructions read to the jury. (See R. 106: Trial Tr., Vol. 7, PageID 2169-71). Davis claims this was an error because it confused the jury and allowed them to assume a time frame rather than conclude that Davis sold the drugs close enough in time to create a sufficient causal link. Davis is mistaken and his argument is a patent attempt to cast doubt on the jury's determination of guilt.

Davis complains because this language was included, it led to the jury's question as to the meaning of "on or about," and this Court's instruction – which he claims was improper. (See R.

7

98: Trial Tr. Vol. 8., PageID 930).  After discussing the jurors' question with counsel, being unable to reach a resolution and over defendant's objection, this Court concluded it would instruct the jury that the phrase "on or about" "must be viewed and framed in light of all the evidence the jury must reasonably consider in reaching a verdict on Count 1 and, if applicable, the death enhancement."  (Id.).

To support his argument, Davis relies on the Sixth Circuit's opinion in United States v. Neuroth, 809 F.2d 339, 341-42 (6th Cir. 1987), which held that courts should compare the date in the indictment with the proof required at trial as to what date the offense occurred to assess whether "on or about" language should be included in the jury instructions.  The Neuroth Court held that even where the inclusion of the "on or about" language is erroneous, only a harmless error standard of review is applied.  Id. at 342 ("An error, not of constitutional dimension, is harmless unless it is more probable than not that the error materially affected the verdict."). Here, any error in including the "on or about" language was arguably harmless because, as discussed above, the jury was required to determine that JCW's death resulted from the use of drugs distributed by Davis under Section 841(b)(1)(C) and but-for that drug distribution JCW would not have died.  Thus, even if the inclusion of the "on or about" language was erroneous, given that this Court provided the jury with the but-for causation instruction as required by Burrage, any error was harmless because it was not probable that the error materially affected the verdict.

Based on the evidence presented at trial, there is little risk that the jury was confused as to who distributed the drugs that resulted in JCW's death.  The testimony of Harry Karaplis, Corey Stock, and the phone evidence admitted at trial, corroborated their testimony, and provided ample evidence that Davis distributed drugs to JCW and his friends in the days leading up to

8

JCW's death.  That evidence also showed that Davis distributed drugs to Karaplis and JCW on March 7, at approximately 12:34 a.m., which the government argued throughout the trial killed JCW.  As such, the multiple sales leading up to JCW's death, to include the sale on March 7, 2016, created a sufficient temporal and casual connection between Davis' drug trafficking and the death.  Moreover, the Court's response to the jury's "on or about" question, which stated that the language "must be viewed and framed in light of all the evidence the jury must reasonably consider in reaching a verdict on Count One and, if applicable, the death enhancement" was entirely proper.  It is pure speculation to allege that it allowed the jury to make an impermissible inference to support a finding of guilt based on the evidence supporting causation that the government presented at trial.  The question simply could have arose because normally the definition of on or about is included in the instructions.  Juries must consider all the evidence and the Court's response to the question was not error let alone substantial legal error.  Just because the jury chose not to credit the defense theories that the drugs came from an alternate source of supply, or that Davis was asleep and did not distribute the drugs, does not mean that the Court's response to the juror's question or the failure to completely remove "on or about" from the instructions created a reasonable likelihood that the alleged substantial legal error affected the outcome of the proceedings.  The government would respectfully assert that the evidence presented did not allow it.

     Finally, in United States v. Ewing, ___ Fed. Appx. ___, 2018 WL 4191102 (6th Cir. Aug. 31, 2018) (unpublished), the Sixth Circuit vacated the defendant's death enhancement under Section 841(b)(1)(C) and remanded for resentencing on the lesser included offense. Davis acknowledges that Ewing did not address the "on or about" language in jury instructions but claims its holding is analogous because Ewing, like Davis, argued there was insufficient

9

evidence that he sold the drugs that resulted in death.  The facts, however, are distinguishable.  In Ewing, the Court found that there was sufficient evidence that Ewing sold heroin laced with fentanyl, but due to the absence of heroin or heroin metabolites in the decedent's blood, there was not sufficient evidence to support the jury's finding that this distribution resulting in death.  Davis claims this supports his argument that based on the "on or about" language in the jury instructions, the jury was allowed to assume a temporal connection between Davis' drug distribution and JCW's death that was not established at trial.  Specifically, he argues that the jury was impermissibly allowed to consider the "on or about" language with respect to the cause of JCW's death.  As explained above, this argument does not hold ground given that the jury was required to determine that "but-for" Davis' drug distribution JCW would not have died.  In other words, the jury determined that it was Davis' drug distribution that resulted in JCW's death.

       Thus, the Court did not err in instructing the jury on the meaning of "on or about" after the jury specifically asked for the meaning of the phrase or by leaving references to "on or about" in the jury instructions.

**CONCLUSION**

      For the foregoing reasons, the government respectfully requests that this Honorable Court deny Davis' Motion for New Trial under Fed. R. Crim. P. 33, as the interests of justice do not require a new trial.

                Respectfully submitted,

                JUSTIN E. HERDMAN
                United States Attorney

By:   s/Vasile C. Katsaros
        Vasile C. Katsaros (OH: 0067386)
        Robert F. Corts (OH: 0041432)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3876 / 3957
        (216) 522-7499 (facsimile)
        Vasile.Katsaros@usdoj.gov
        Robert.Corts@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on November 29, 2018 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

                                                  s/Vasile C. Katsaros
                                                  Vasile C. Katsaros
                                                  Assistant U.S. Attorney

Case: 1:16-cr-00260-CAB  Doc #: 111  Filed:  11/29/18  12 of 12.  PageID #: 2580