UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR260 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| RUSSELL DAVIS, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

After a limited remand from the Sixth Circuit, Defendant asks this Court to exclude evidence because probable cause was not established to search his residence. (Doc. 141). However, the exclusionary rule does not automatically exclude evidence uncovered in violation of the Fourth Amendment. This is especially true where, as here, law enforcement exhibited good faith in their reliance on a judicially approved search warrant.

Accordingly, the Court **DENIES** Defendant's Motion to Suppress.

### I. BACKGROUND[1]

On May 4, 2018, a Jury convicted Defendant for his distribution of fentanyl, from which a death resulted. Defendant appealed. The Sixth Circuit affirmed the conviction but, after concession by the Government, remanded the case back to this Court for a probable cause hearing. *United States v. Davis*, 970 F.3d 650, 666 (6th Cir. 2020).

---

[1] This Court's Background is taken from testimony received on remand, with supplementation from the trial transcript as necessary.

On remand, the Court ordered cross-briefs and held a hearing on March 10, 2022.  Two witnesses testified on behalf of the Government: Lorain Municipal Court Magistrate D. Chris Cook[2] and Detective Ernest "Buddy" Sivert, a retired 29-year veteran of the Lorain Police Department.  Defendant did not present any witnesses.

While the Sixth Circuit's remand concerns the events that occurred on April 12, 2016, more background is necessary.  A month earlier, on March 7, 2016, Detective Sivert responded to a call concerning an overdose death.  The victim was JCW, a young male whose grandfather had been a Lorain Police Officer.  From this initial call, the case stood out to Detective Sivert.

An investigation ensued.  Relevant here, police obtained JCW's cellphone.  The cellphone was password protected and authorities were unable to move pass the lock screen.  Unable to review the content of JCW's cellphone, Detective Sivert subpoenaed Verizon (JCW's cellphone provider) for relevant records.

Despite the cellphone being locked, law enforcement could see that one person attempted to contact JCW numerous times that morning.  That person was Zaharias "Harry" Karaplis.  So, Detective Sivert asked Harry to come to the police station, which Harry did on March 7, 2016.  During that interview, Harry lied to Detective Sivert about his involvement with narcotics.  But Harry did confirm that JCW had a drug problem and Harry identified an individual by the name of "Red" as the potential source of the narcotics.

Two days after meeting with Harry, Detective Sivert received phone logs from Verizon.  After organizing the information, Detective Sivert realized that Harry had not been completely forthcoming during his interview.  Based on his review, Detective Sivert determined that Harry and JCW went together to purchase narcotics that night.

---

[2] Magistrate Cook has since been elected to the Lorain County Court of Common Pleas.  The Court refers to him as "Magistrate" simply to reflect the position he held during the relevant period.

Detective Sivert then asked Harry back to the police station for a follow up interview. During this second interview, Detective Sivert presented Harry with the evidence from JCW's cellphone. At this point, Harry requested an attorney.

During the second interview with Harry, Detective Sivert confirmed another potential witness – Corey Stock. Stock's name had appeared throughout the text messages that Detective Sivert received on March 9. Detective Sivert asked Stock to come to the police station for a conversation. The two met on March 22. During that conversation, Detective Sivert obtained a "location of a house" and "a description of someone."[3]

Detective Sivert thought it was necessary to meet with Harry for a third time. This time, Harry came with counsel. At this meeting, Harry, using Google Maps, identified the residence where he and JCW went to purchase drugs the morning of March 7. That residence was identified as 1832 Garden Avenue. Harry also provided a physical description of Defendant, as well as a description of Defendant's vehicle.

The same day as Harry's third meeting, Detective Sivert surveilled the suspect residence on Garden Avenue. During surveillance, Detective Sivert located 1832 Garden Avenue and matched it to the property identified by Harry. Detective Sivert also observed a vehicle outside of the residence that matched Harry's description. He ran the vehicle's license plate through police database and determined that Defendant owned the vehicle.

Back at the station, Detective Sivert continued his search of police records. This resulted in evidence showing that Defendant had the nickname of "Big Red." Detective Sivert also

---

[3] This paragraph is supplemented by Detective Sivert's testimony at Trial. During the remand hearing, Detective Sivert did discuss talking with Stock and Stock telling Detective Sivert where Defendant's house was located. (Doc. 147, PageID: 2959-60).

conducted a photo array containing Defendant's picture. After being shown this photo array, Harry indicated on Defendant's photograph that "100% this is Red." (Doc. 148-2).

A few days later, on April 12, Harry met with Detective Sivert for a fourth time. This time, Harry showed the detective a text message he said came from Red. This prompted Detective Sivert to attempt a controlled phone call between Harry and Red that would be recorded for evidence. During the call, Defendant provided damaging information.

On the same day as the controlled call, law enforcement sought a search warrant for 1832 Garden Avenue. Specifically, police sought Defendant's cellphone. In support of the search, Detective Sivert[4] made the following allegations:

1. In the early morning hours of…March 7, 2016, [JCW] was in contact with Zaharias Karaplis, another heroin user, for the purpose of obtaining heroin.

2. Zaharias Karaplis and [JCW] made contact with a male known as "Red" and later identified as Russell Davis, on his cellular phone (***) ***-8810 for the purpose of purchasing heroin, both through text and voice communication.

3. Zaharias Karaplis and [JCW] met with Russell "Red" Davis on March 7, 2016 for the purpose of buying heroin from him.

4. [JCW] ingested the purported heroin from Russell "Red" Davis and it caused him to overdose. The time between the purchase of the heroin from Russell "Red" Davis and the estimated time of death, by the Lorain County Coroner Steven Evans is approximately one (1) hour.

5. Toxicology tests conducted by the Lorain County Coroner's Office revealed that [JCW] had a lethal dose of Fentanyl* in his system.

6. On April 12, 2016, at 0945 hours Zaharias Karaplis received a text message from Russell "Red" Davis via cellular telephone with the number (***) ***-8810.

---

[4] Detective Sivert did not draft the Affidavit. Instead, a fellow officer drafted it, Detective Sivert reviewed it and ultimately executed it.

(Doc. 31-1, PageID: 121).

The crux of the issue before the Court on remand is whether Detective Sivert presented additional testimony to supplement this Affidavit. Magistrate Cook testified that, while it is his normal process to read the affidavit, place the affiant under oath and then engage in further discussion, he did "not have a specific recollection of discussing th[is] case" with Detective Sivert. (Doc. 147, PageID: 2882). For his part, Detective Sivert testified that he and Magistrate Cook,

> Discussed the majority of the case. I can't sit here today and say specifically what we talked about, but it was general information about the case, basically how it started, the whole thing, and how we were able to reach the conclusion why we wanted a search warrant to obtain the phone.

(*Id.* at PageID: 2933).

Following the hearing, the Court requested additional briefing. The Government filed its post-hearing brief on April 18, 2022 (Doc. 149) and Defendant filed his brief on April 20, 2022. (Doc. 151).

## II. LAW & ANALYSIS

### A.  Standard of Review

The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion" and exists "when there is a 'fair probability' given the

totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004), *cert. denied*, 543 U.S. 1095 (2005) (citing *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

In *Illinois v. Gates*, the Supreme Court announced the basic standard for determining whether an affidavit establishes probable cause to issue a search warrant:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, **given all the circumstances set forth in the affidavit** before him [or her],…there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

426 U.S. 213, 238-39 (1983) (emphasis added); *see also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003); *Davidson*, 939 F.2d at 859.

A finding of probable cause "should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236. However, reviewing courts must ensure that the issuing magistrate or judicial officer did "not serve merely as a rubber stamp for the police." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964)). Further, reviewing courts "will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.* at 915 (quoting *Gates*, 462 U.S. at 239)).

Typically, a reviewing court concerns itself with only those facts which appear within the four corners of the affidavit. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998) (citing *Whitley v. Warden*, 401 U.S. 560, 564-65 (1971)); *Untied States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973). There is also a presumption of validity with respect to affidavits supporting search warrants. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Finally, it is well-recognized

that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation," and courts should "remain cautious not to interpret the language of affidavits in a hyper-technical manner." *Weaver*, 99 F.3d at 1378 (citations omitted).

In its post-hearing brief, the Government asks the Court to answer three questions: 1) did the Affidavit on its own establish probable cause to search 1832 Garden Avenue?; 2) if not, did Detective Sivert's oral testimony provide the additional facts necessary to search the residence?; and 3) if the answer is no, does the good-faith exception to the exclusionary rule apply? The Court answers these questions in turn.

**B.     The Affidavit's Four Corners Do Not Establish Probable Cause to Search the Residence**

The four-corners of the Affidavit did not establish the requisite nexus to search 1832 Garden Avenue. A finding of probable cause requires a "sufficient nexus between the place searched and the evidence sought." *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007); *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). The affidavit must suggest that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought and not merely that the owner of the property is suspected of crime. *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Detective Sivert's Affidavit contains just six short factual paragraphs that detail JCW's overdose, the events preceding it and Defendant's role as the suspected supplier of the deadly drugs. It also includes facts that Defendant used his cellphone to facilitate drug sales and contact Harry after JCW's death. From these factual averments, Detective Sivert concluded "that [Defendant] is trafficking in heroin from the residence of 1832 Garden Avenue and is using his cellular telephone (***) ***-8810 as an instrument of his trafficking business…[and] that the

cellular telephone…is still inside 1832 Garden Avenue, Lorain, Ohio, the residence of [Defendant]." (Doc. 31-1, PageID: 121).

Beyond this conclusion, what is noticeably absent from Detective Sivert's averments are any factual allegations connecting Defendant to 1832 Garden Avenue. The only references to this address are in the recited conclusion and the opening paragraphs, with brief references to where the crimes were committed and the request to search the residence. This is improper, as the law requires an affidavit be supported by facts, rather than unadorned conclusions. *Weaver*, 99 F.3d at 1377. And since the Affidavit does not allege any facts connecting Defendant, his cellphone and his activities to 1832 Garden Avenue, the Affidavit does not present a "sufficient nexus between the place searched and the evidence sought." *Kenny*, 505 F.3d at 461.

The Government seemed to agree with this conclusion when the case was before the Sixth Circuit. *See Davis*, 970 F.3d at 666 ("The government now concedes that Sivert's affidavit did not contain enough facts tying Davis (and his phone) to this location"). And the Government does not seriously contend now that the Affidavit established the proper nexus to the residence. Instead, the Government relies on Detective Sivert's testimony at the remand hearing to establish probable cause. But we are not there yet. Accordingly, the answer to the Government's first question is "no" – the Affidavit on its face did not provide sufficient probable cause for issuing the warrant.

Before moving to Detective Sivert's testimony, the Court addresses Defendant's argument that the Affidavit presented materially false information under *Franks v. Delaware*. Throughout briefing and oral argument, Defendant attacks the Affidavit on facts that it did not contain. According to Defendant, if law enforcement would have included facts about the credibility of Harry, the Magistrate would have never issued the search warrant in the first place.

The Government argues this disclosure was unnecessary because each item was independently verified through further investigation.

To reiterate the above – when making a probable cause determination, courts are generally concerned with only those facts within the four corners of the affidavit. *Weaver*, 99 F.3d at 1378. Defendant would like the Court to consider **additional facts** not contained in the Affidavit. This is plausible, as a *Franks* issue may be predicated on material omissions. *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001). But the Sixth Circuit has "recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkins*, 107 F.3d 1213, 1217 (6th Cir. 1997). To be entitled to a hearing, a defendant must (1) make "a substantial preliminary showing that the affiant engaged in a deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit; and (2) [show that] a finding of probable cause would not be supported by the affidavit if the omitted material were considered[.]" *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008); *see also United States v. Fisher*, 824 Fed. App'x 347, 353 (6th Cir. Aug. 19, 2020) (a defendant must show "that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause"). Finally, when alleging material omissions, a defendant faces a higher bar for obtaining a hearing as opposed to an allegedly false affirmative statement. *Fowler*, 535 F.3d at 415; *see also Graham*, 275 F.3d at 506 (a *Franks* hearing is only merited in cases of omissions in 'rare instances').

Defendant has not established that the omitted material should have been included in the Affidavit. Even though Defendant did not hurdle the 'higher bar' to show his entitlement to a hearing, the Court allowed Defendant to proceed on this theory and question both witnesses

about his claims. But counsel's questioning did not establish that Detective Sivert engaged in any deliberate falsehood or recklessly disregarded the truth. Rather, it established that Detective Sivert verified and pursued additional investigatory tactics as he uncovered more information. As the Detective stated himself, he "wouldn't have presented [information obtained from Harry] if [he] didn't think it was credible." (Doc. 147, PageID: 2943). This certainly does not support Defendant's theory that the detective misled the Magistrate with certain omissions.

Furthermore, the Affidavit identified the main witness – Harry. This is not a scenario where law enforcement is relying on an anonymous source or a confidential informant. Rather, it was a witness known to law enforcement and the magistrate. Harry also admitted to certain criminal behavior, which is relevant to a probable cause finding. *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility – sufficient at least to support a finding of probable cause to search").

Finally, the probable cause inquiry would not be impacted by the inclusion of this information. The fact that Harry initially lied to Detective Sivert about his own drug use has no bearing on the nexus to the residence – which the Court found was the missing link for probable cause. Accordingly, Defendant's challenge under *Franks* has no merit.

**C.      Detective Sivert's Supplemental Testimony Did Not Provide Probable Cause**

Next, the Government claims that Detective Sivert provided the required nexus orally when he sought the search warrant from the Magistrate. Because the Detective did this while under oath, the subsequent search did not offend the Fourth Amendment. Defendant disagrees. He points to one fact gleaned from the hearing on remand – no one could testify as to the

specifics of what was discussed between the Magistrate and the Detective. Accordingly, it is impossible to find that the Detective provided the requisite nexus to the residence.

The Sixth Circuit has "long held that an affiant may supplement an inadequate affidavit with factual allegations presented to the magistrate through sworn testimony." *Davis*, 970 F.3d at 666 (collecting cases). This is because the Fourth Amendment "does not require oral testimony to be transcribed or otherwise recorded. Nor did the American legal tradition at the time of the Fourth Amendment's adoption." *Id.* (quoting *United States v. Patton*, 962 F.3d 972, 974 (7th Cir. 2020)). The important part, for Fourth Amendment purposes, is that the affiant be under oath when he provides the supplemental information. *See id.*; *Sparks v. United States*, 90 F.2d 61 (6th Cir. 1937) (supplemental testimony must be competent and sworn before supplementing a written affidavit); *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 482 (6th Cir. 2006) ("the issuing magistrate may consider sworn, unrecorded oral testimony supplementing a duly executed affidavit to determine whether there is probable cause upon which to issue a search warrant"); *United States v. Parker*, 4 Fed. App'x 282, 284 (6th Cir. 2001) (supplemented information provided while under oath is clearly entitled to consideration, while unsworn testimony must be disregarded because probable cause affidavits are not to be supplemented with unsworn statements); *Patton*, 962 F.3d at 974 (reciting the Fourth Amendment's requirement of an "oath" supporting probable cause).

While the parties overlook the significance of the oath requirement, the Court finds that the evidence supports the fact that Magistrate Cook placed Detective Sivert under oath before discussing the investigation and issuing the warrant to search 1832 Garden Avenue. When asked directly by the Court, Detective Sivert answered that Magistrate Cook placed him under oath before discussing the case further. (Doc. 147, PageID: 2965). And for his part, Magistrate Cook

stated that it was his practice to always place officers appearing before him under oath. (*Id.* at PageID: 2880). Defendant did not contest either statement. Thus, the Court finds that Detective Sivert was under oath when he discussed the investigation with Magistrate Cook.

The issue for the Government, however, is that the record does not definitively establish *what* (i.e., the substance) Detective Sivert told Magistrate Cook under oath. And this is where Rule 41's requirement of transcribed oral statements would be helpful.[5] But the Court does not have that evidence because Magistrate Cook neglected to memorialize the conversation.

Instead, the Court is left with the evidence revealed at the hearing on remand and the witnesses' (understandably) hazy memories. Start with Magistrate Cook – he testified that he could not specifically recall issuing the warrant in this case. While it was his practice to talk about the investigation with affiants, he cannot recall doing so with Detective Sivert. (Doc. 147, PageID: 2881-82).

For his part, Detective Sivert does remember talking about this case with Magistrate Cook. That is because this investigation stood out to him – a retired officer's grandson dying of an overdose. But as to the substance of the conversation, that remains unclear. While on direct examination (and subject to substantial leading from the prosecutor), Detective Sivert testified that he "believed" he talked about Defendant's connection to 1832 Garden Avenue. Specifically, Detective Sivert said he:

> Believed we talked about the vehicle and the residence. Like I explained, I think we pretty much discussed a lot about the case, as far as how we obtained evidence and how we obtained information

---

[5] The Government wants to distinguish the requirements between Ohio Criminal Rule 41 and Federal Criminal Rule 41. But both Rules require a judicial officer to record any oral supplementation of an affidavit for a search warrant. *Compare* Fed. R. Crim. P. 41(d)(2)(C) ("testimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit") *with* Ohio R. Crim. P. 41(C)(2) ("Before ruling on a request for a warrant, the judge…may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit").

> that led us to this point. That's a standard thing I would do in any search warrant, but specifically, verbatim I don't know if I could explain exactly what was said, but it was mostly about the process of the case, how it went through investigation.

(*Id.* at PageID: 2937).

On cross-examination, Detective Sivert reiterated he could not recall any specifics of the conversation and that he did not make a contemporaneous record. (*Id.* at PageID: 2938-39). On redirect then, the Government focused on all the information the Detective had at the time of the search that tied Defendant to 1832 Garden Avenue: i) a description of the suspect house, including location; ii) a description of the suspect vehicle; iii) police records tying Defendant to the residence; iv) surveillance of the residence by law enforcement; v) confirmation that the residence matched the provided information; and vi) confirmation that the vehicle matched the provided information, as well as that it was owned by Defendant.[6] (*See generally*, *id.* at PageID: 2955-62).

The witnesses' "hazy" recollections make these "frothy nexus waters," *see United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021), even more unclear. To approve this warrant and supplementation, the Court must find that Magistrate Cook had a "substantial basis" to find probable cause to search a location. But the unknown specifics here, even considering Detective Sivert's "belief," make it impossible to determine if that substantial basis – and the all-important nexus – were discussed here. Because of this, the Court finds that the Affidavit, even after

---

[6] The Government also cites the text "Garden" from Defendant to Corey Stock as information that law enforcement had prior to the search of the residence. (*See* Doc. 147, PageID: 2956-57). This is factually incorrect. As the Government's Exhibit shows, the "Garden" text came from the Cellebrite of Defendant's phone, which was uncovered ***after authorities searched the residence***. Detective Sivert testimony at trial confirms this fact. (Doc. 97, PageID: 909-10, discussing that the Federal Bureau of Investigation conducted the Cellebrite search after authorities found Defendant's phone at his residence). The Government's mistake here underscores the issue presented in the case – what was relayed from Detective Sivert to Magistrate Cook at the time he applied for the Search Warrant?

considering Detective Sivert's additional sworn testimony, did not provide a substantial basis to search the residence.

**D.     Law Enforcement Relied in Good Faith on the Search Warrant**

Despite the lack of probable cause, the Court finds that Detective Sivert and his fellow officers relied on the court-issued search warrant in good faith. Accordingly, the Court will not exclude the evidence uncovered at Defendant's residence.

The exclusionary rule – the court-developed remedy for Fourth Amendment violations, *see Mapp v. Ohio*, 367 U.S. 643 (1961) – does not mechanically suppress evidence for every Fourth Amendment violation. *United States v. Asgari*, 918 F.3d 509, 512 (6th Cir. 2019). One exception exists when a judicial officer (like Magistrate Cook here) makes the independent decision that probable cause existed for the search. *Reed*, 993 F.3d at 450. In those cases, if an officer relies in good faith on the court-issued search warrant, then the court should not bar the evidence found, so long as four exceptions to the good-faith rule do not apply. *Asgari*, 918 F.3d at 512; *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) (*Leon* outlined four circumstances in which an officer's reliance would not be objectively reasonable). Defendant argues that two of the four circumstances are present here.[7]

*i.     Magistrate Cook did not Abandon His Role*

First, Defendant claims that Magistrate Cook acted as a rubber stamp for the police. Defendant argues three facts support this determination: 1) Magistrate Cook did not inquire into the source's reliability and basis of knowledge of any hearsay evidence; 2) Magistrate Cook did not observe the procedural safeguards of Ohio Criminal Rule 41; and 3) no one could testify to

---

[7] Defendant also mentions that law enforcement's dishonesty in line with *Franks* also precludes the application of good faith. But as discussed above, officers did not deliberately convey a falsehood or display a reckless disregard for the truth by not including credibility considerations of Harry. (*See* Section B).

- 14 -

the specific facts relayed by Detective Sivert in supplementing the Affidavit. The Government barely addresses this argument, instead arguing that "there is no allegation that the issuing Magistrate was not neutral and detached in evaluating the [A]ffidavit." (Doc. 149, PageID: 3022).

*Leon* found that an exception to its good-faith rule would be if the issuing magistrate wholly abandoned his judicial role. 468 U.S. at 923. In such a case, it would be unreasonable for law enforcement to rely on the judicially-approved warrant. *Id.* When a defendant makes such an argument, he bears the burden to prove that the judicial officer acted as a rubber stamp. *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005).

To highlight a scenario where a judicial officer abandoned his role, the *Leon* Court cited its decision in *Lo-Ji Sales, Inc. v. New York*. In *Lo-Ji*, the town justice issued an open-ended search warrant that allowed for the seizure of unidentified items that the town justice himself thought met the definition of obscenity. 442 U.S. 319, 321-22 (1979). And to make that determination, the town justice participated – indeed, led – the police search of the property. *Id.* at 322. The *Lo-Ji* Court found that this violated the judicial officer's role to remain detached and neutral, as the town justice acted more like a law enforcement officer rather than a judicial officer. *Id.* at 327.

The example of *Lo-Ji* demonstrates why Magistrate Cook did not abandon his role as a judicial officer. And Defendant's three facts to the contrary do not satisfy his burden in demonstrating otherwise. First, Defendant cites no Fourth Amendment caselaw that supports the requirement that a judicial officer must inquire into the facts and allegations of an Affidavit. To the contrary, affidavits are reviewed based on what they contain, not on what they lack. *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) ("The affidavit is judged on the adequacy of

what it does contain, not on what it lacks, or on what a critic might say should have been added"). Moreover, as discussed above, Detective Sivert independently verified each of the facts alleged, thereby not relying solely on Harry's information.

Second, Defendant faults Magistrate Cook for not recording the supplemental testimony as called for in Ohio Criminal Rule 41. While the Court agrees that a recording of this interaction would have been helpful for probable cause purposes, the Court disagrees that this means Magistrate Cook abandoned his role as a judicial officer. Indeed, the Sixth Circuit has applied *Leon*'s good-faith exception despite the judicial officer not following the prescribed rules of criminal procedure. *See United States v. Chaar*, 137 F.3d 359 (6th Cir. 1998) (applying *Leon* despite a technical violation of Federal Criminal Rule 41(c) telephonic warrant requirements). Thus, *Leon* tolerates judicial officers not strictly complying with the criminal rules of procedure.

Defendant's final point is that no one can testify to the specifics of the conversation between Magistrate Cook and Detective Sivert. Thus, Magistrate Cook acted simply as a rubber stamp. While this fact is relevant (indeed, determinative) for a probable cause finding, it does not show that Magistrate Cook abandoned his role. Defendant does not argue that Magistrate Cook did not read the Affidavit and simply approved the warrant because of his blind faith in Detective Sivert. Indeed, Magistrate Cook indicated that he would have reviewed the affidavit prior to authorizing the search. (Doc. 147, PageID: 2883). Thus, much of Defendant's attack goes to the specifics of the supplemental conversation – and not that a supplemental conversation, under oath, occurred. The Court finds that such supplementation demonstrates Magistrate Cook's neutrality. It reflects a quest for additional facts – albeit specifics that are unknown to this Court.

All told, Defendant's cited examples do not reflect Magistrate Cook's abandonment of his role or his lack of neutrality. *Leon* and its progeny tolerate some degree of judicial mistake. And Magistrate Cook's actions fall within that acceptable threshold.

    ii.    *The Affidavit for Search, Coupled with Additional Testimony, was not Bare-Bones*

Defendant also attacks law enforcement's good faith by arguing that the Affidavit was bare bones. A second exception to the good-faith rule involves situations where the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. This exception applies to affidavits commonly classified as "bare-bones." *United States v. Baker*, 976 F.3d 636, 647 (6th Cir. 2020). A bare-bones affidavit is one that "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding the veracity, reliability and basis of knowledge." *Gilbert*, 952 F.3d at 763.

When the affidavit is threadbare with allegations concerning the nexus to the place to be searched, the affidavit will avoid the bare bones label so long as it identifies a 'minimally sufficient' nexus between the criminal activity and the place to be searched. *Reed*, 993 F.3d at 450. The Sixth Circuit reminds district courts of the "daylight" between proper nexus for probable cause and a minimally sufficient one for *Leon*. *Id.* at 450-51; *Gilbert*, 952 F.3d at 763 ("there must be daylight between the "bare bones" and "substantial basis" standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function"). And a minimally sufficient connection is "one in which there is 'some connection, regardless of how remote it may have been – some modicum of evidence, however slight – between the criminal activity at

issue and the place to be searched.'" *Reed*, 993 F.3d at 451 (quoting *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018)).

Finally, Defendant argues that the Court cannot look past the four-corners of the affidavit to determine whether law enforcement acted in good faith. Citing the Sixth Circuit's 2005 decision in *United States v. Laughton*, Defendant argues that "a determination of good-faith reliance…must be bound by the four-corners of the affidavit." 409 F.3d 744, 751. While this is generally true, the Sixth Circuit distinguished *Laughton* and noted one significant exception: "a court reviewing an officer's good faith under *Leon* may look beyond the four-corners of the warrant affidavit to information ***that was known to the officer and revealed to the issuing magistrate***." *Frazier*, 423 F.3d at 535-36 (emphasis added). And the pronouncement in *Frazier* has been repeatedly affirmed in subsequent Sixth Circuit opinions. *See*, *e.g.*, *Reed*, 993 F.3d at 453; *United States v. Tucker*, 742 Fed. App'x 994, 999 (6th Cir. Aug. 7, 2018) ("when determining whether the executing officers acted in good faith, we are bound by the four corners of the affidavit and may not consider what the officer executing the warrant knew or believed unless the extra-affidavit information was made known to the issuing magistrate") (citations omitted).

With the above in mind, the Court holds that the Affidavit, along with oral supplementation, provided a minimally sufficient connection between Defendant's drug dealing, his cellphone and his residence. Thus, Detective Sivert reasonably relied on the search warrant issued by Magistrate Cook.

At the outset, the Court finds Detective Sivert's testimony credible. And as discussed above, this case is different than *Laughton*. Here, we have testimony that Magistrate Cook placed Detective Sivert under oath and discussed the investigation. Defendant does not dispute

- 18 -

these facts. There is also evidence that Detective Sivert conducted a thorough investigation between the time of JCW's death and the search of Defendant's residence. Again, Defendant does not attack the Detective's investigation – including surveilling the property, reviewing governmental records and corroborating witness statements concerning the residence. And the Court finds that Detective Sivert's 'belief' that he discussed this information with Magistrate Cook satisfies the 'modicum of evidence' necessary to connect Defendant, his drug dealing and his phone to 1832 Garden Avenue. While this belief may not have been enough for probable cause, the Court holds that it satisfies the "less-demanding showing" necessary for good faith under *Leon*. *See Laughton*, 409 F.3d at 748-49.

### III. CONCLUSION

This case presents a difficult determination of whether probable cause existed to search 1832 Garden Avenue. And the passage of time does not aid in that analysis. Neither does the judicial officer's failure to follow the rules of criminal procedure.

But while the record "does not definitively establish the presence of probable cause, neither does its definitively establish its absence." *Patton*, 962 F.3d at 974. And Magistrate Cook's mistake cannot justify punishing law enforcement in this case. There was no debate – either at trial or at the hearing on remand – that Detective Sivert took additional investigatory steps not disclosed in his Affidavit. More importantly, there was no serious contention that Detective Sivert did not talk to Magistrate Cook while under oath. Detective Sivert testified that he discussed the entire case with Magistrate Cook. From Detective Sivert's point of view then, he complied with everything the judicial officer required of him. And since there is no evidence that he acted in bad faith throughout his investigation and relied on the Search Warrant, the

Court declines to suppress the evidence uncovered at 1832 Garden Avenue.  Accordingly, the Court **DENIES** Defendant's Motion.

    **IT IS SO ORDERED.**

                                       s/ Christopher A. Boyko
                                       **CHRISTOPHER A. BOYKO**
                                       **Senior United States District Judge**

**Dated: June 28, 2022**